**UNITED STATES of America, Appellee,**

v.

**Ellen BUECHLER, Appellant.**

**No. 76–2362.**

United States Court of Appeals,
Third Circuit.

Argued May 3, 1977.

Decided June 22, 1977.

As Amended July 14, 1977.

Jonathan L. Goldstein, U. S. Atty., Jeffrey J. Greenbaum, Asst. U. S. Atty., Newark, N.J., for appellee.

David A. Ruhnke, Asst. Federal Public Defender, Newark, N.J., for appellant.

Before GIBBONS and HUNTER, Circuit Judges, and LAYTON,* District Judge.

* Caleb R. Layton, 3rd, United States District Judge for the District of Delaware, sitting by designation.

1. Rule 35 reads as follows:
 The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. The court may reduce a sentence within 120 days after the sentence is imposed, or within

JAMES HUNTER, III, Circuit Judge:

Ellen Buechler pleaded guilty to one count of embezzling $262.12 from a federally insured bank. She was sentenced under the Federal Youth Corrections Act, 18 U.S.C. § 5010(a), to a five-year suspended sentence, three years of probation, and—as a condition of probation—she was ordered to make restitution of some $1,989.35 to the bank. In a motion to correct sentence under Fed.R.Crim.P. 35,[1] Buechler argued both that the restitution order had no legal basis in the Federal Youth Corrections Act and that the court arrived at the amount of restitution in an illegal manner, since it refused to hear Buechler on the subject. We do not question the refusal of the court below to grant relief on those grounds. Nevertheless, we must vacate the sentence because of our conclusion that the district court lacked authority to order restitution in an amount greater than the loss caused by the offense for which Buechler was convicted.

I.

On June 13, 1975, Ellen Buechler, a former employee of the Pilgrim State Bank, appeared before the District Court to enter a plea of guilty to a one-count information charging her with willful misapplication of bank funds by an employee of a federally insured bank in violation of 18 U.S.C. § 656. The district judge explained the information to her:

Now this charges that on or about January 20, 1975 at Cedar Grove, New Jersey, you were an employee of the Pilgrim State Bank, and that bank has its deposits insured by the Federal Deposit Insurance Corporation, and that while you were an employee of the bank and with

120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law.

intent to injure and defraud the bank you knowingly and wilfully misapplied the sum of $262.12 of the monies [sic], funds and credits of that bank.

Brief for Appellee, Exhibit A, at 6. After the court explained Buechler's rights, she repeated her intention to plead guilty to that information.

The judge then inquired about a plea bargain:

THE COURT: Have there been any plea negotiations? I ask this question to counsel.

MR. LOWENSTEIN [Federal Public Defender]: None, Judge. This is an original plea.

THE COURT: Even so, have there been any negotiations leading to this plea and the information?

MR. RAZZANO: No, your Honor.

MR. LOWENSTEIN: I had urged the United States Attorney's office to waive the prosecution all together [sic], and they felt they could not do so in this case.

MR. RAZZANO: The only representation that I can make is that this plea will dispose of all prosecutions by the United States of America arising out of the Defendant's theft of approximately $3,000 from the Pilgrim State Bank between December 12, 1974 and January 21, 1975.

THE COURT: That should be on the record.

*Id.* at 11. The court then determined that no other agreements, promises, or bargains had been made, and Buechler's guilty plea was accepted.

Sentencing occurred on February 26, 1976. The court decided to sentence Buechler, age 20, under the Federal Youth Corrections Act, 18 U.S.C. § 5010(a):

It is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for a period of five years.

Execution of term sentence is suspended. The defendant is placed on probation for a period of three years from this date, pursuant to 18 U.S. Code 5010(a). Special conditions of probation: Number

One, to undertake a program of psychiatric treatment as approved by the Probation Office.

Number Two, to make restitution of the remaining balance of $1,989.35, with interest at eight percent from January 22, 1975.

How much time do you need to pay?

Don't make any promises you can't keep.

MR. LOWENSTEIN: Might I address myself to that point? That is not a figure that is settled. That figure is in dispute.

THE COURT: I understand it, but I am resolving the dispute.

MR. LOWENSTEIN: Well, your Honor is going to fine the defendant?

THE COURT: It's a condition of probation that the dispute is resolved with.

MR. LOWENSTEIN: I would prefer you impose a fine.

THE COURT: I prefer there be restitution.

MR. LOWENSTEIN: It's not restitution if she doesn't agree she owes the money.

THE COURT: She can consider it a fine.

MR. LOWENSTEIN: I would urge your Honor to have a hearing or at least order an accounting.

THE COURT: I am denying that. I have material in the presentence report from which to make a determination of the sentence on the basis of hearsay and I am making the finding on that basis. They have records; she doesn't. I'm not holding any separate hearing.

Brief for Appellants at 15a–16a. Thus, despite the fact that Buechler pleaded guilty to embezzling only $262.12, she was ordered to restore nearly $2,000—an amount she was not even given a chance to dispute.

Buechler filed a motion to correct sentence on August 18, 1976—174 days after sentencing. The district court denied relief, and this appeal followed. Buechler argues first that the Federal Youth Corrections

Act does not authorize district courts to order restitution as a condition of probation. Second, she maintains that the court below imposed her sentence in an illegal manner: by refusing to allow argument as to the proper amount of restitution, the court denied her due process of law.

## II.

■ The purpose of the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5026, "is the eventual rehabilitation of youthful offenders . . . in line with the modern trend in penology which accents rehabilitation, rather than punishment." *Brisco v. United States,* 246 F.Supp. 818, 819 (D.Del. 1965) (Layton, J.), *aff'd,* 368 F.2d 214 (3d Cir. 1966). Buechler characterizes the imposition of restitution as "punitive" and argues that Congress could not have intended it as a sentencing alternative under the rehabilitation act.

■ The Act's sentencing provision, section 5010, presents the trial court with a variety of options. If the court decides that commitment would not prove fruitful, it can suspend sentence and place the youth on probation, § 5010(a); it may sentence the youth to a period of no more than six years in the custody of the Attorney General for treatment and supervision, § 5010(b); it may sentence the youth to an indeterminate period of such custody, § 5010(c); it may sentence the youth under other applicable penalty provisions, § 5010(d); and finally, it may commit the youth to sixty days' custody for further observation and study, § 5010(e). These options enlarge the discretion "of federal trial courts in order to permit them to sentence youth offenders for rehabilitation of a special sort." *Dorszynski v. United States,* 418 U.S. 424, 436, 94 S.Ct. 3042, 3049, 41 L.Ed.2d 855 (1974).

The first court to consider the propriety of combining pecuniary exactions with the sentencing options expressly provided in section 5010 was *United States v. Hayes,* 474 F.2d 965 (9th Cir. 1973). The *Hayes* court held that the trial court could not

impose a fine upon a defendant committed to custody under section 5010(b):

> The Federal Youth Corrections Act is an alternative sentencing provision. At the discretion of the judge a youth offender deemed treatable under the Act can be sentenced to treatment rather than punishment under the applicable penalty provision provided by law. A combination of rehabilitative treatment and retributive punishment is not intended and is improper.

*Id.* at 967. The Fifth Circuit followed this analysis in *Cramer v. Wise,* 501 F.2d 959 (5th Cir. 1974), holding that a defendant committed to custody under section 5010(b) could not also be fined.

In *United States v. Mollet,* 510 F.2d 625 (9th Cir. 1975), the Ninth Circuit, with no new analysis, applied the reasoning of *Hayes* to defendant who had been placed on probation under section 5010(a)—as was Buechler in the case *sub judice*—rather than committed under section 5010(b). The *Mollet* court held fines unavailable in the case of defendants sentenced under section 5010(a). Shortly thereafter, the Ninth Circuit, in *United States v. Bowens,* 514 F.2d 440 (9th Cir. 1975), extended the holding of *Mollet* and proscribed the imposition of a restitution order and fine in conjunction with a sentence of probation under section 5010(a). But more recently, the Ninth Circuit distinguished *Bowens* and upheld a restitution order—apart from a fine—as a condition of probation. *United States v. Hix,* 545 F.2d 1247 (9th Cir. 1976) (per curiam).

Other courts have not appeared so doubtful about trial courts' authority to impose fines and restitution orders in conjunction with sentences under § 5010. In *United States v. Prianos,* 403 F.Supp. 766 (N.D.Ill. 1975), the court rejected the Ninth Circuit's approach in *Hayes,* at least with respect to section 5010(a). The *Prianos* court noted that the term "probation" as used in section 5010(a) is nowhere defined in the Federal Youthful Offenders Act; indeed, the Act, in section 5023(a), expressly provides that nothing in the Act should be construed to

alter any provisions in the rest of the sentencing chapter. Therefore, concluded the *Prianos* court, a trial court's powers to condition a sentence of probation must rest on the general probation statute, 18 U.S.C. § 3651.[2] And section 3651 expressly permits probation to be conditioned on payment of fines or restitution. Moreover, the *Prianos* court declared, it may well be that the payment of fines need not conflict with the Act's rehabilitative purpose and could in some instances be deemed rehabilitative. *Id.* at 769–70.

In a similar vein, the court in *United States v. Kitson,* No. 74–211–Orl.–Cr–R (M.D.Fla., May 15, 1975), ruled that the Fifth Circuit's holding in *Cramer*—that a youthful offender could not be fined in conjunction with commitment under section 5010(b)—did not preclude imposition of a fine as a condition of probation under section 5010(a). The court relied not only on the fact that all probation orders are governed by section 3651, but also its conclusion that prohibition of monetary exactions would "diminish the liberal use of the probation alternative." *Id.* at 2.

The Fourth Circuit, too, has upheld the imposition of fines as a condition of probation under section 5010(a). In *United States v. Oliver,* 546 F.2d 1096 (4th Cir. 1976), that court refused to follow *Hayes* and *Cramer,* observing that the Act does not by its terms prohibit monetary fines.[3] The *Oliver* court also echoed the concern expressed in *Kitson:* prohibition of fines, restitution, and other discretionary sentencing options would diminish the "liberal use of the probation alternative." *Id.* at 1099. Finally, the court declared that the purpose of the Act was to increase—not circumscribe—trial courts' sentencing options in the interest of rehabilitating youthful offenders and that the imposition of fines and restitution orders may well enhance the rehabilitation powers of a sentence in certain cases. *Id.* at 1099 & n.3. In *United States v. Durst,* 549 F.2d 799 (4th Cir. 1976), this reasoning was extended to restitution orders.

■ We find the reasoning of *Prianos* and *Oliver* most persuasive. It is clear that section 5010(a) has not expressly precluded the imposition of a reimbursement order or a fine as a condition of probation. Because the Federal Youth Corrections Act nowhere defines or explains "probation"—and in light of the express denial, contained in section 5023(a), of alterations in the rest of the sentencing chapter—the "probation" provided for in section 5010(a) must be governed by the general probation provision, section 3651. Section 3651 expressly permits probation to be conditioned upon restitution orders and fines.

■ Further, we believe that the Federal Youth Corrections Act was designed to increase the flexibility of the choices available to a sentencing court. If in the court's discretion, restitution or a fine, in combination with probation and various other orders, will best serve the cause of rehabilitating the youthful offender, then we should not strain our reading of the Act to preclude such an option.

In this case we are faced with a restitution order.[4] In our view, restitution is certainly not inconsistent with rehabilitative

---

2. The *Prianos* court drew this line of reasoning from Judge Anderson's dissent in the *Mollet* case.

3. Moreover, the *Oliver* court pointed out that § 5010(b)—which was involved in *Hayes* and *Cramer,* upon which the Ninth Circuit cases involving § 5010(a) were based—does not purport to stand in lieu of the *entire penalty* otherwise provided by law. Instead, it is "in lieu of the penalty of imprisonment." By rejecting the broader, "penalty" language of an earlier draft, said the *Oliver* court, Congress evidenced its intention to preclude only adult prison terms, not other penalties available under the law, such as fines. *United States v. Oliver,* No. 75–2161 (4th Cir., 1976), at 1098.

4. Despite the trial judge's statement that Buechler could consider the amount a fine, he seems to have intended it to serve as restitution; it was based solely on the figures the bank alleged that she had embezzled. In either case, we conclude he had the power to impose such an order.

aims. On the most mundane level, if the availability of restitution prompts a sentencing judge to forego sentencing a youth to commitment, then all the evils attendant upon prolonged confinement in the company of other wrongdoers may be avoided. More fundamentally, the restoration of the proceeds of the crime, in and of itself, may be an expiatory act. As some commentators have observed, making amends by making restitution may prove to be just the catharsis that a youthful offender needs in order to regain the self-respect—or respect for others—that will enable him to respect the law thenceforth.[5] In any event, the youth will have learned the first lesson that society—in its effort to rehabilitate *all* offenders—tries to teach: society, whenever it can help it, will not allow crime to pay. In view of substantial scholarly support for the proposition that restitution may be rehabilitative in certain cases,[6] we decline the invitation to read the Federal Youth Corrections Act as proscribing it.

### III.

 Buechler also argues that the court below denied her due process of law by refusing to hear her objections to the amount she was ordered to restore to the bank. The Government contends that we have no jurisdiction to hear that claim. Motions under Rule 35 to correct a sentence imposed in an illegal manner—as opposed to a sentence which itself is illegal—must be made within 120 days of sentencing; Buechler's motion was made 174 days after sentencing, and it did not contain this due process argument. For both those reasons, insists the Government, we cannot consider Buechler's second claim. We need not deal either with Buechler's claim or the Government's objection, however, because it is plain on the face of the record that the sentence imposed was, in and of itself, illegal.[7]

The probation statute, 18 U.S.C. § 3651, provides that among the conditions of probation, the defendant may "be required to make restitution or reparation to aggrieved parties for actual damages or *loss caused by the offense for which conviction was had.*" (Emphasis added.) In *United States v. Follette,* 32 F.Supp. 953, 955 (E.D.Pa.1940), Circuit Judge Maris, sitting as trial judge, interpreted that language to mean that the court lacked power to order restitution in an amount greater than that involved in the particular offense for which defendant was indicted and convicted.[8] *Accord, Karrell v. United States,* 181 F.2d 981, 986–87 (9th Cir. 1950); *see United States v. Stoehr,* 196 F.2d 276, 284 (3d Cir. 1952) (overturning restitution order in criminal tax case because determination of amount of loss caused by offense for which defendant was convicted had to await civil determination or formal admission); *United States v. Taylor,* 305 F.2d 183, 187–88 (4th Cir. 1962) (same); *United States v. Hoffman,* 415 F.2d 14, 21–23 (7th Cir.), *cert. denied,* 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969).

---

5. *See, e.g., United States v. Hix,* 545 F.2d 1247, 1248 (9th Cir. 1976) (per curiam) ("therapeutic benefit" flows from act of compensating victim for the loss caused).

6. *See, e.g.,* Eglash, *Creative Restitution: Some Suggestions for Prison Rehabilitation Programs,* 28 Am.J. Corrections 20 (1958); Schafer, *Compensation of Victims of Criminal Offenses,* 10 Crim.L.Bull. 605 (1974).

7. Appellate courts may, on their own motion, notice plain error not presented by counsel. *Silber v. United States,* 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962); *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936).

8. The bank and its surety determined that Follette had embezzled $466.28. She was indicted and convicted, though, for embezzling only $203.99. Judge Maris at first ordered restitution in the larger amount. When the statutory language was drawn to his attention, he reduced the amount of $203.99. He cited with approval a New York case, *People v. Funk,* 117 Misc. 778, 193 N.Y.S. 302 (County Ct. 1921), in which defendant was convicted of stealing $3.80, but promised to restore the entire $1,500.00 her employer determined she had taken. Despite her promise, the court interpreted the New York statute—similar to § 3651 —to mean that the trial court lacked power to order restitution in amount greater than that for which conviction was had, $3.80.

Following the *Follette* case, the loss caused by the offense for which Buechler was convicted was $262.12—the amount stated in the one-count information to which she pleaded guilty. Yet without even giving her an opportunity to speak,[9] the court below ordered her, on the basis of presentence reports that are not even part of the record, to restore $1989.35 to the bank. Because that amount exceeds the "loss caused by the offense for which conviction was had," the restitution order exceeded the authority conferred by section 3651 and is, to that extent, illegal.[10]

For the foregoing reasons, the sentence will be vacated and the case remanded for re-sentencing in conformity with this opinion.

---

9. The Government makes much of the fact that defendant failed to speak at her guilty plea hearing when the prosecutor told the judge: ". . . [T]his plea will dispose of all prosecutions by the United States of America arising out of the Defendant's theft of approximately $3,000 from the Pilgrim State Bank . . . ." Defendant's silence, however, does not constitute an admission of guilt to embezzling that amount. At most, her silence indicates only that she was aware that the Government considered charging her with embezzling that amount.

10. We need not and do not resolve the question presented in *United States v. Landay*, 513 F.2d 306 (5th Cir. 1975). There, Landay was indicted for six counts of causing the interstate transportation of forged securities, in connection with a check kiting scheme. He pleaded guilty to three counts, and the others were dismissed. In the meantime, the defrauded bank obtained a civil consent judgment against him, apparently in an amount greater than that covered by the three counts on which he was convicted. As a condition of probation, Landay was ordered to make restitution of the full amount of the consent judgment (by means of an elaborate security agreement). The Fifth Circuit upheld the restitution order, despite the fact that it apparently exceeded the amount involved in the offenses for which Landay was convicted. The court emphasized Landay's formal agreement, embodied in the consent judgment, as to the precise amount of loss caused by his crimes. The *Landay* court did not comment, though, on the source of the trial court's *power* to impose a restitution order exceeding the amounts involved in the conviction counts. Judge Maris's view of the limiting language of § 3651, expressed in *Follette*, appears opposed to the Fifth Circuit's assumption that such power exists.

We also need not address the question whether restitution in an amount exceeding that involved in the count to which a guilty plea is entered may be imposed as a condition of probation, where the defendant explicitly agrees to it as one of the terms of a plea bargain in a multiple count indictment.