**UNITED STATES of America, Appellee,**

v.

**Anthony J. Pivirotto and John Robert WOODS, Appellants.**

**No. 85–3247.**

United States Court of Appeals, Third Circuit.

Argued Aug. 14, 1985.

Decided Oct. 17, 1985.

---

Thomas A. Livington (argued), and Raymond Radakovich, Pittsburgh, Pa., for appellant.

J. Alan Johnson, U.S. Atty., Paul J. Brysh (argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

Before ADAMS, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Defendant pleaded guilty to two of multiple counts for mail fraud which resulted in substantial losses for many unfortunate investors. He contends that an order of restitution imposed as a condition of probation violates his agreement with the government and requires that he be permitted to withdraw his plea. We reject his argument because the likelihood of a restitution order and its extent were fully explained to him by the district court before accepting the plea.

Defendant Woods pleaded guilty to two counts of a 35 count indictment charging mail fraud in violation of 18 U.S.C. § 1341, as well as one count of bankruptcy fraud, 18 U.S.C. § 152. The district court sentenced defendant to terms of imprisonment of two years on count 8, and five years on count 13. The sentence was suspended on count 13, and defendant was placed on probation for five years. As a condition of probation, defendant was directed to make restitution in the sum of $989,218, the obligation being joint and several with co-defendant, Anthony Pivirotto. Woods has appealed.

The indictment alleges that from August 24, 1973 through June 13, 1980, Woods and Pivirotto engaged in a scheme to defraud the investors in Safeguard Investment Company. Pivirotto and Woods controlled Safeguard, which solicited money from investors for the avowed purpose of making mortgage loans on residential properties.

Safeguard misrepresented to investors that their deposits were federally insured and that the company was licensed as a banking institution by the Department of Banking of Pennsylvania.

In 1973, Safeguard discontinued its practice of making secured loans to the general public and instead made unsecured loans of over one million dollars to Woods and Pivirotto, as well as to business entities they controlled. Hence, rather than promoting mortgage loans, Safeguard advanced the funds provided by investors to Woods and Pivirotto and also used the money to pay interest on deposits held by Safeguard. After operating at a financial loss, Safeguard filed a petition for reorganization under chapter 11 in May 1980.

On January 29, 1985, defendant Woods' counsel and the United States Attorney negotiated a plea bargain which was incorporated in a letter of that date. Defendant agreed to plead guilty to counts 8 and 13 of the indictment and, in return, the government promised to dismiss the remaining 33 counts. The government also agreed not to recommend a specific sentence to the court. As a part of the bargain the letter stated that the parties understood and agreed that "if this conditional plea agreement is approved by the court, the maximum penalty which may be imposed on the defendant is (a) a term of imprisonment of not more than 10 years; (b) a fine of not more than $10,000; or (c) both."

Before accepting the plea, the court conducted a lengthy Rule 11 colloquy with the government and Woods. The Assistant United States Attorney presented an outline of the evidence about the operation of the scheme. He also asserted that the money defendants received from Safeguard was used to purchase various real estate holdings in Maine, Texas, and Pennsylvania. The court was informed that defendants had turned over to the trustee in bankruptcy some of the property purchased with proceeds from the scheme. Defendants also had relinquished about $300,000 in personal assets. After liquidating various properties, the trustee returned to the

investors approximately 21% of the principal they had invested with Safeguard.

The court inquired about the defendant's income and assets and asked Woods to provide a financial statement for the probation officer's use in preparing a presentence report. The court stated:

"I want your assets, cash on hand, CD's, deposits, and your real estate holdings, because you can, in theory, I suppose, be made to pay some restitution by the court in this proceeding, separate and distinct from the bankruptcy matter. Do you understand that?

[Defense Counsel]: "We will prepare a total profit and loss with an explanation for the probation officer, whoever is doing the report, we will work closely with him on that."

A discussion followed among the judge, defendant, counsel, and the Assistant U.S. Attorney on the amount of principal that was owed to the investors and the difficulty of determining that sum. The court said,

"We have to determine what, if anything, these men are capable of paying and how much, legitimately, can be claimed, and it seems to me that, while it is going to be a complicated presentence report, it has to be done out of fairness to the government, the investors, and the defendants."

The court asked defendant Woods questions about his net worth and current income, to which he made vague responses.

The court observed that a strong argument could be made that most of the defendant's assets were generated by the illegal enterprise. Consequently, the burden was placed on him to separate the legally acquired holdings from those procured with funds from the fraudulent scheme. The judge continued,

"Otherwise you may be looking at a substantial restitution obligation. If you want to clear the slate this is your opportunity. If you want to spend the rest of your lifetime likely fighting with the Internal Revenue Service and this court over restitution, then you be vague and evasive."

In reply defendant stated that he did not intend to mislead the court.

The court cautioned defendant that, "You cannot come back at some time in the future, after sentence is imposed and contend it is too onerous, or you did not have any rights. If you want a trial, I will pick a jury today." Defendant indicated that he understood. The judge repeated,

"If you and Pivirotto are squirreling away assets and hoping to walk away from this with substantial real estate holdings, you are making a sad mistake, because I'm not going to let you, and you will spend the rest of your life litigating with the Internal Revenue and other creditors, and the probation officer understands my direction that restitution will be directed. Do you understand that?

Defendant: Yes Sir."

Only after this lengthy hearing did the court accept the plea.

The sentencing hearing was held four months later. At the beginning of the proceeding, the court announced that on the basis of the pre-sentence report it intended to order restitution in the sum of $989,218, which represented the balance of the principal claimed by investors. No allowance was made for loss of interest.

Defendants called the bankruptcy trustee as a witness to establish the amounts distributed to investors. The district judge then read into the record a list of the investors and the amount of each individual's loss. Although counsel for Pivirotto and Woods argued on behalf of their clients, neither disputed the figures produced by the government, which showed a loss of $989,218 to the investors. Rather, Woods' attorney stated that the defendants

"Come to this court with some idea of making those creditors as whole as they can be. I would ask the court that Mr. Woods be given the opportunity to continue to make any restitution that it feels is necessary to bring these creditors whole, at least on their principal, and any other order that it may so enter. He hasn't shirked that responsibility in the past when he voluntarily went to bankruptcy and returned property, and he wouldn't shirk any responsibility this court would order today or any time hereafter."

Counsel then asked that his client be placed on probation.

After pronouncing sentence, the district judge stated that any future payments made by the bankruptcy trustee would reduce the amount of restitution owed by the defendants.

On appeal, Woods contends that the sentence and plea must be vacated because the amount of restitution exceeds the terms of the plea bargain. In the alternative, defendant argues that the district court erred in ordering restitution on the entire scheme rather than just on count 13 to which he pleaded guilty and on which he was placed on probation.

It is the defendant's position that by ordering restitution that was not specifically provided for in the agreement, the court in effect rejected the plea. Consequently, defendant asserts that he should be permitted to withdraw his guilty plea.

■ We are not persuaded by the defendant's argument, Fed.R.Crim.P. 11(e)(4) provides that if the plea agreement is rejected, the court must advise defendant that it is not bound by the agreement and give him the opportunity to withdraw the plea. In addition, the judge must inform the defendant that if he persists in the guilty plea, "the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement."

The district judge in this case complied with the requirements of Rule 11. In fact, the court's actions conformed with the terms of the plea agreement between the government and the defendant as far as it went. The period of incarceration was substantially less than the maximum that could have been imposed, and there was no agreement on what punishment would be imposed. The only reference to penalty in

the plea agreement letter was a statement as to the maximum that could be directed.

Although not included in the letter there can be no question on this record but that defendant was told in unequivocal terms that restitution would be imposed as part of probation. The lengthy colloquy before the plea was accepted could not be clearer. It is also significant that after the district court stated its intention to impose restitution, it afforded the defendant an opportunity to withdraw his plea and go to trial. Thus, the court did not accept the plea until after the defendant indicated he understood that restitution would be ordered and that he had the option of asking for a trial.

The defendant's conduct after the entry of the guilty plea is also significant. During the four months following, he assisted the probation officer in preparing a financial statement for submission at the time of sentencing. At no time during that four month interval did the defendant express any dissatisfaction with the court's announced intention to order restitution.

Even on the day of sentencing, the defendant's experienced counsel told the court that his client was willing to make restitution. The striking thing about counsel's statement is that it was made after the court had stated what the amount would be and after the government had explained the basis for the calculation. Moreover, even though the bankruptcy trustee was called as a witness, defendant offered no evidence to dispute the government's computation of the amount due.

An irresistible inference is that it is the defendant's disappointment in not being able to avoid incarceration, rather than the court's restitution order which has prompted his present position. The possibility of a prison term, however, had been thoroughly explained to him, and it is obvious that any request for withdrawal of a plea based on its imposition cannot succeed on this record.

The defendant relies on *United States v. Runck*, 601 F.2d 968 (8th Cir.1979). In that case the court of appeals remanded for resentencing because the district court entered an order of restitution even though it was not mentioned in the plea agreement. That case is distinguishable because there was no discussion of restitution before the plea was accepted. The court of appeals observed that "the condition of payment of a sizeable sum of money should have been discussed ... the possibility of [restitution] as a condition of probation [should] have [been] made known and agreed to by the bargainers." In the case at hand, there was substantial discussion before the plea was accepted, and by his conduct defendant acquiesced in the amount of restitution ordered at the sentencing hearing.

 Defendant also contends that the district judge improperly participated in plea bargaining, citing *United States v. Adams*, 634 F.2d 830 (5th Cir.1981), and *United States v. Werker*, 535 F.2d 198 (2d Cir.1976). We find those cases inapposite. In both cases, the sentencing judge participated in discussions before the pleas were presented in court.

By contrast, here all comments were made by the district judge when the plea agreement was disclosed in open court. As the Advisory Committee Notes to Rule 11 state, "The amendment makes clear that the judge should not participate in plea discussions leading to a plea agreement. It is contemplated that the judge may participate in such discussions as may occur when the plea agreement is disclosed in open court." Because the district judge participated only after the plea was offered at that stage, we find nothing improper in his action.

The *Runck* court questioned the sentencing judge's assumption that restitution could be ordered even though the plea agreement was silent on that point. In the present case, the letter containing the agreement did not list restitution as one of the possible consequences of conviction. By advising defendant of the likelihood that restitution would be ordered, the district judge did not violate Rule 11 but actually carried out its spirit by disclosing an

additional possible consequence of conviction.

We observe that in commenting on the subject of restitution the district judge anticipated the current version of Rule 11(c), effective August 1, 1985, which requires the district court to inform the defendant and "determine that he understands ... when applicable, that the court may also order the defendant to make restitution to any victim of the offense." [1] As the rule now stands, the district judge is under an obligation to advise the defendant of the possibility of restitution, along with the statutory penalties. In this case giving the warning even before adoption of the new rule was not error.

■ Finally, as an alternative proposition, defendant argues that "restitution could not be directed in any amount greater than that involved in the particular offense for which defendant was convicted, in this case count 13." That count charged an unlawful mailing to "Sam and/or Elsie C. Fanelli" in pursuance of the scheme to defraud investors of Safeguard. The record reveals that the Fanellis lost $4,758.47 in the scheme, and that their loss was not necessarily caused by the specific mailing cited in the indictment.

Defendant refers to our case of *United States v. Buechler*, 557 F.2d 1002 (3d Cir. 1977), in which we held that "the district court lacked authority to order restitution in an amount greater than the loss caused by the offense for which [defendant] was convicted." In that case, the defendant pleaded guilty to one count of embezzling $262.12 from a bank. The district court ordered the defendant to make restitution of $1,989.35, despite the defendant's objections to that amount at sentencing. *Cf. United States v. DeLeo*, 644 F.2d 300, 302 n. 2 (3d Cir.1981) ("where the amount of restitution at sentence is no greater than that set forth in the indictment, failure of a defendant to object at sentencing could be deemed as a waiver of objection to the amount of restitution"). *See United States v. John Scher Presents, Inc.*, 746 F.2d 959 (3d Cir.1984). *See also United States v. Johnson*, 700 F.2d 699 (11th Cir. 1983), *United States v. Gering*, 716 F.2d 615 (9th Cir.1983), *contra United States v. Davies*, 683 F.2d 1052 (7th Cir.1982). *Cf. United States v. Black*, 767 F.2d 1334 (9th Cir.1985) (after guilty verdicts, restitution could not exceed amount set out in indictment).

*Buechler* differs from the present case in that the restitution order there was not imposed as a condition of probation but as part of the defendant's sentence for conviction on a count that specifically mentioned an amount smaller than that for which restitution was ordered. Indeed, in *Buechler*, the court reserved the question whether restitution in excess of the counts to which a plea is entered may be imposed as a condition of probation where defendant agrees to restitution as one of the terms of a plea bargain in a multiple count indictment. Several other courts of appeals, however, have addressed the same or similar questions.

In *Phillips v. United States*, 679 F.2d 192 (9th Cir.1982), the defendant pleaded guilty to three counts of a 26 count mail fraud indictment. The defendant agreed to restitution in the amount of $6,000, which exceeded the amount set forth in the three counts to which he pleaded, but was less than the total amount realized as a result of the scheme. The court of appeals affirmed the power of the trial court to impose such a restitutionary order after the matter had been fully explored in open court, and the defendant had agreed to pay. Commenting on the policy arguments favoring such an arrangement, the court noted that plea bargaining in multi-count cases would be inhibited if the defendant were not permitted to make restitution as a condition of probation. In addition, the rehabilitative features of the probation program would be frustrated if the defendant

---

**1.** Title III of the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3579, authorizing restitution in addition to or in lieu of any other penalty is not applicable to this case because the offenses occurred before the Act's effective date of January 1, 1983.

were relieved of the consequences of his wrongdoing without being required to compensate the victims.

In *United States v. Tiler,* 602 F.2d 30 (2d Cir.1979), the defendants pleaded guilty to one count of a conspiracy to evade import duties. The district court ordered restitution of the total loss caused by the conspiracy. The defendants protested the restitution order, arguing that because conspiracy is an inchoate offense, the government had not suffered any actual damages. The court rejected that argument as "overly technical" and held that restitution could be ordered for damages which were caused by the operation of the conspiracy over a period of time.

In the case at hand, the government argues that similar reasoning should apply. The offense is a scheme to defraud, and each count is simply an act in furtherance of the unitary scheme; therefore, establishing that a single count caused a specific loss would be difficult. It is the overall scheme that is central to all the counts and gives rise to the victims' financial loss. We find merit in this argument, and when viewed in conjunction with the consent of defendant, the case at hand falls within the reasoning adopted by the *Phillips* court. In the circumstances here, the district court had authority to direct restitution to the victims for the total remaining amount of loss caused by the defendants' illegal scheme, and therefore it did not abuse its discretion in making such an order.

Accordingly, finding no error in the district court's imposition of restitution, we will affirm its judgment.