**UNITED STATES of America**

v.

**Peter SLEIGHT, Appellant.**

**No. 86–5101.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 19, 1986.
Decided Jan. 12, 1987.

J. Fortier Imbert, Thomas W. Greelish, U.S. Attys., Samuel Multhrop (argued), Asst. U.S. Atty., Newark, N.J., for appellee.

Brian D. Lucianna, Carl D. Poplar (argued), Poplar & Florio, Cherry Hill, N.J., for appellant.

Before SEITZ, SLOVITER, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

Peter Sleight, who was convicted on one count of conspiracy to commit mail fraud and one count of devising a scheme to commit mail fraud in violation of 18 U.S.C. §§ 371, 1341, and 2, and whose conviction was affirmed by this court, was ordered by the district court to pay restitution to his former employer pursuant to the Federal Probation Act. He appeals, challenging both the order of restitution and the amount.

Sleight had been employed as vice-president of sales for I.C.P. Cocoa, Inc. (I.C.P.) from 1973 until 1979, and had the responsibility for buying raw cocoa used in products sold by I.C.P. and for sale of the finished products. At trial, the government proved that Sleight, while so employed for I.C.P., had an arrangement with Milford Bonner, the owner of A.B.C. Food Ingredients, Inc. (A.B.C.), to speculate on the cocoa futures market and to share the profits. Pursuant to that arrangement, Sleight and Bonner engaged in at least five transactions with I.C.P. Sleight admitted receiving 17 checks from Bonner, totalling $152,484, as his share of the profits from transactions with I.C.P., his employer.

Sleight views this money as a return on an investment; the government views it as representing impermissible kickbacks.

The two count amended indictment charged Sleight, in count 1, with conspiracy with Bonner to defraud I.C.P., to obtain money and property by means of false pretenses, and to deprive I.C.P. of Sleight's "honest, faithful and loyal performance," as a part of which conspiracy, Sleight received a kickback of $8,000 on September 22, 1978, and in count 2, with receipt through the mail of a check for $22,800 drawn on the account of a company owned and operated by Bonner pursuant to a scheme to defraud I.C.P.

Sleight was convicted by a jury on both counts. On May 3, 1984, he was sentenced to five years' probation and ordered to make "complete restitution" to I.C.P. pursuant to the Federal Probation Act, 18 U.S.C. § 3651.[1] The exact amount of restitution was not set at the time of sentencing. Instead, Sleight was ordered "[a]s a special condition of probation" to enter into a restitution agreement under the supervision of the Probation Department "which will provide restitution to the defrauded company, the defendant's former employer." Supp.App. at 110; *see also* Supp.App. at 111.

Sleight appealed his conviction to this court, and after hearing oral argument, we affirmed the conviction by judgment order dated December 5, 1984, 755 F.2d 925. Sleight did not challenge the restitution order in his first appeal.

On June 20, 1985, the district court held a hearing to determine the amount of restitution because no restitution agreement had been entered into. On January 23, 1986, the district court entered an order which contained findings that the evidence at trial established "that the defendant, between 1976 and 1978, received at least 17 checks from Milford Bonner, t/a, A.B.C. Food Ingredients, Inc. totaling $152,484.00

---

1. The Victim and Witness Protection Act, 18 U.S.C. § 3579, which also provides for restitution, was enacted in 1982 and is effective only with respect to offenses occurring on or after January 1, 1983. Pub.L. No. 97–291, § 9(b)(2), 96 Stat. 1248, 1258 (1982).

and that the defendant received the proceeds from those checks"; "that the monies paid by [Bonner t/a A.B.C.] represented kickbacks paid to the defendant during his employment as vice-president of sales for [I.C.P.]"; and "that the payment of these monies were part and parcel of the scheme and artifice to defraud [I.C.P.] of the honest, loyal and faithful services of its employee, the defendant." The court also found that Sleight is financially able to make restitution if given sufficient time, and, accordingly, ordered him to make restitution to I.C.P. during his five year probationary period in the amount of $152,484, plus interest of 8 percent from the time the various 17 checks at issue were dated. Sleight challenges this order on various grounds.

## II.

Sleight's initial argument is that the district court erred in ordering any restitution because the district court permitted the jury to convict him of mail fraud without evidence that I.C.P. suffered any actual damage or loss. The government argues that we are limited to considering the amount of the restitution because Sleight failed to raise in his first appeal any challenge to the portion of the sentence requiring him to make complete restitution to I.C.P. As set forth in the preceding section, the amount of restitution was not fixed until a year and a half after the sentence was imposed.

■ The government has failed to direct us to any authority in support of its position that would require us to divide appellate consideration of restitution into two separate appeals, one on the award itself and the other on the amount awarded. Consideration of the propriety of the

amount awarded, which the government concedes is properly before us, necessarily encompasses the possible ruling that zero dollars should have been awarded. Although not controlling, we find instructive our recent decision that a court order awarding "reasonable attorneys' fees" that has not yet been reduced to a definite amount is not a final decision within the meaning of 28 U.S.C. § 1291. *See Becton Dickinson and Co. v. United Automobile, Aerospace and Agricultural Implement Workers of America,* 799 F.2d 57, 61–62 (3d Cir.1986). The same concerns with duplicative expenditure of judicial time and resources that underlie the finality requirement also militate against piecemeal appeals on the restitution award. Therefore, we reject the government's contention and turn to the substance of Sleight's argument.

■ Sleight argues that because the jury was not required to find economic injury to I.C.P. in order to find him guilty of mail fraud, there was no basis for finding that I.C.P. suffered "actual damages" or that it was an "aggrieved party" as required for an order of restitution under 18 U.S.C. § 3651. We may assume that the jury understood that it did not have to find that I.C.P. suffered a tangible financial loss.[2] Nonetheless, the court was fully capable of making the requisite findings as to loss.

Congress distinguished between the jury's role in convicting a defendant of an offense and the court's role in sentencing a defendant to make restitution as a condition of probation. The Federal Probation Act provides that "any *court ...* when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby" may suspend a defendant's sentence and place the

---

**2.** At one point the district court instructed the jury that "[s]ince the gravamen of the offense is a 'scheme to defraud', it is not necessary for the United States to either allege or prove that the victim, in this case I.C.P. Cocoa, Inc., was actually defrauded or suffered a loss." App. at 108. However, the court also instructed the jury that "if you find that [Sleight] knowingly used his fiduciary position to obtain secret profits for his

own personal benefit at his employer's expense, that breach of his fiduciary duty constituted an act of fraud for purposes of the mail fraud statute." App. at 114. Sleight argued in his first appeal that the prosecution failed to satisfy the elements of mail fraud. In light of this court's earlier affirmance of Sleight's conviction, we need not address the requisite elements for a mail fraud conviction.

defendant on probation "for such period and upon such terms and conditions as the *court* deems best." 18 U.S.C. § 3651 (emphasis added). The Act specifically includes restitution among the conditions of probation. The same section provides that "the defendant ... may be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had." *Id.*

It is evident from the statutory language that Congress has reposed in the court the power to utilize restitution as a condition of probation. This is consistent with the overall congressional scheme to place the sentencing function in the trial court in most circumstances. A necessary consequence of the district court's power to order restitution is its authority to make the factual findings upon which restitution must be based. As the Second Circuit stated, "But, except as Congress chooses to provide for jury decision-making, *see, e.g.,* Fed.R. Crim.P. 31(e) (authorizing special jury verdict as to extent of interest or property subject to forfeiture), the fact-finding necessary for sentencing is the responsibility of the sentencing judge, save in those rare situations where the degree of the offense, and the consequent maximum penalty, turns on a factual issue requiring jury consideration." *United States v. Brown,* 744 F.2d 905, 909 (2d Cir.) (footnote and citations omitted) (discussing restitution orders pursuant to the Victim and Witness Protection Act, 18 U.S.C. §§ 3579, 3580), *cert. denied,* 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984). Thus, we believe that Congress intended that the factual findings on which an order of restitution as a condition of probation must rest under the Federal Probation Act, i.e. that the person receiving restitution is an "aggrieved party" who suffered "actual damages or loss" that was "caused by the offense for which conviction was had," 18 U.S.C. § 3651, may be made by the trial court.

A challenge to restitution awarded under similar circumstances to those presented here was considered recently by the Court of Appeals for the District of Columbia. In

*United States v. Lemire,* 720 F.2d 1327 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984), defendants, who were convicted by the jury of wire fraud, argued "that the district court may not order restitution [as a condition of probation] because the jury verdict does not depend on a finding of an actual monetary loss to Raytheon." *Id.* at 1352. The court rejected this contention, noting that restitution is imposed as a probation condition as part of the permissible sanction for criminal activity. The court referred to "recent case law which holds generally that once the defendant has been convicted the trial judge may order restitution for the amount of loss she finds the criminal violation caused." *Id.* at 1353 (footnote omitted). We agree.

Of course, "where the trial record does not clearly support the district court's assessment of losses due to illegal activity, the court must support its restitution order with additional findings of fact." *Id.* at 1354. *See United States v. Harris,* 761 F.2d 394, 404 (7th Cir.1985) (amount of loss caused by offense may be determined by proof at trial, judicial determination or agreement of the parties); *United States v. Gering,* 716 F.2d 615, 625 (9th Cir.1983) (same); *United States v. Brown,* 699 F.2d 704, 711–12 (5th Cir.1983) (remanding to district court to set forth factual basis to support specific amount of losses); *United States v. Johnson,* 700 F.2d 699, 701–02 (11th Cir.1983) (remanding to district court to specify bases for its determination of restitution and to "reenter such sentences as it determines to be appropriate"); *United States v. McMichael,* 699 F.2d 193, 195 (4th Cir.1983) ("actual damages directly caused by the illegal activity with which a defendant is charged may be ordered to be repaid under the Probation Act whenever the amount of the loss is legally determined").

The essential factor in the procedure leading to a restitution award is that defendant be given the opportunity to contest the information on which the restitution award was based. In *United States v.*

*Palma,* 760 F.2d 475 (3d Cir.1985), we upheld a restitution order against a wide ranging constitutional attack. Although the case arose under the Victim and Witness Protection Act [VWPA], 18 U.S.C. §§ 3579, 3580, rather than the Federal Probation Act, the legal and constitutional principles are the same. Palma, who had pled guilty to charges of embezzling a substantial sum of money from his employer bank, was ordered to make restitution to it in the sum of $1,581,200 based on the facts set forth in a presentence report conducted by the probation services of the court. We rejected Palma's contention that his due process rights had been violated, relying upon the fact that Palma was afforded and took advantage of the opportunity to present witnesses in support of his factual claims at the sentencing hearing. *Id.* at 477. We rejected as well his contention that the district court was not equipped to resolve complicated damages disputes in the context of a sentencing proceeding, particularly since Palma admitted to having taken the entire amount. *Id.* at 478. As we noted above, Sleight also conceded receiving the 17 checks at issue.

Palma also contended that the Seventh Amendment required that he be given a jury trial on the amount of restitution. Judge Seitz, writing for the court, pointed out that Congress intended restitution to be an integral part of the sentencing process and hence the restitution provisions of that statute were not to be viewed as subject to the jury trial guarantee of the Seventh Amendment. *Id.* at 479–80. We view the *Palma* decision as dispositive of Sleight's contentions that the jury, rather than the court, was required to make the predicate factual findings for the restitution order. *See also United States v. Brown,* 744 F.2d at 909 ("The numerous decisions entitling a defendant to an opportunity to contest disputed factual matters relevant to sentencing implicitly and properly assume that, once the jury has determined guilt on a particular offense, the

sentencing function may be constitutionally discharged solely by the trial judge.").

It remains only to consider whether there was a factual basis to support the district court's award of restitution pursuant to 18 U.S.C. § 3651. The district court based its findings in this respect on the trial record, since the only evidence presented by Sleight at the restitution hearing related to his ability to pay.

■ The evidence at trial established that Sleight received 17 checks totaling $152,484 between 1976 and 1978, which the court found represented kickbacks paid to Sleight by Bonner on purchases and sales of cocoa for I.C.P. The president of I.C.P. testified that the checks represented amounts to which I.C.P. was properly entitled because they should have accrued to I.C.P. in the form of lower prices for the cocoa it purchased. The district court rejected Sleight's argument that there was only an "intangible loss". Instead, the court said:

> We're talking about something akin to the concept of lost profits. We're talking about money which the employer was entitled to make which he did not make. It didn't know that it was available to it. It was satisfied because it didn't know any better.
>
> That's what the testimony was. I heard it. You construed it differently, but I sat there and heard it, the jury convicted, and we're now here to determine how much.

App. at 68–69.

Sleight argues that the evidence that the price paid by I.C.P. was at the market price or lower supports his contention that there was no loss to I.C.P. This overlooks the undisputed fact that Sleight and Bonner were able to purchase cocoa at a price lower than market. At times, but not always, this was because the cocoa was in form and value lower than that normally sold on the market.[3] Sleight's obligation

---

3. For example, Bonner testified that some of the goods he purchased were "old, some of them were broken bags" and his vendor knew that it

could not sell these items to the trade per se but looked for someone "to be able to take them

as an officer and employee of I.C.P. was to purchase the cocoa for I.C.P. at the best price available, even below market when possible. Because of Sleight's arrangement with Bonner, he failed to take advantage of the opportunity to buy cocoa on I.C.P.'s behalf at the price actually available, but instead structured the purchases so that he personally could make a profit on the transactions. The kickbacks were Sleight's share of the profits. The district court was entitled to find from Sleight's purchases of cocoa at a price below market that he could have purchased at those prices on behalf of I.C.P. and that Sleight's profits realized from sales to I.C.P. represented the difference between the sum I.C.P. paid for the cocoa and the sum I.C.P. could have paid absent Sleight's fraud. Thus, Sleight's profits fairly represented I.C.P.'s damages.

Since it is indisputable that the 17 checks, which Sleight admitted receiving, were part and parcel of the transactions which the jury found constituted the scheme to defraud of which Sleight was convicted, there is ample basis in the record to conclude that I.C.P. suffered a loss of $152,484 caused by the crime for which Sleight was convicted, as required by 18 U.S.C. § 3651.

### III.

■ Sleight next challenges the restitution order on the ground that the amount he was ordered to pay exceeds the amount of loss charged in the indictment. The indictment specifically charged that Sleight was paid a kickback of $8,000 on September 8, 1978, in furtherance of the conspiracy and that Sleight received a check of $22,800 on the same date as an overt act in furtherance of the conspiracy and as an element of count 2 charging a scheme to defraud. Sleight argues that therefore the amount of restitution ordered must be limited by the terms of the indictment to the absolute maximum or cap of $30,800.00.

and rebag them and move them out in assorted

We reject that narrow view of the scope of restitution. In the first place, the indictment itself makes clear that the particular $30,800 payments specified therein do not constitute the sum total of improper kickbacks. For example, the conspiracy count alleges, after reference to the $8,000, that "it was a further part of said conspiracy that [Bonner] would and did pay [Sleight] kickbacks in varying amounts on other shipments of cocoa powder from [A.B.C.] to [I.C.P.]," an allegation incorporated into count 2 as well. Thus, Sleight had notice that the government would not limit its proof to payments of $30,800, and, as we have already stated, it did not.

In the second place, there is substantial precedent in this court that upholds restitution orders for amounts in excess of the dollar amount specifically alleged in the counts for which defendant was convicted. In *United States v. Woods*, 775 F.2d 82 (3d Cir.1985), we affirmed a restitution order for $989,218, the full amount of loss to all investors injured by the defendant's fraud, even though the defendant pled guilty to only two counts of a multiple count indictment for mail fraud. We rejected the argument of Woods that he could only be ordered to pay restitution for the amount involved in the particular offenses for which he was convicted, or $4,758. In affirming the restitution order for the full amount of loss to all investors, we stated that:

> The offense [in this case] is a scheme to defraud, and each count is simply an act in furtherance of the unitary scheme; therefore, establishing that a single count caused a specific loss would be difficult. It is the overall scheme that is central to all the counts and gives rise to the victims' financial loss.

*Id.* at 88. *See also United States v. Martin*, 788 F.2d 184, 189 (3d Cir.1986) (holding that "restitution [under the Victim and Witness Protection Act] need not be limited to ... the specific amount alleged in [the count of mail fraud to which defendant pled]"). *But see United States v. Whit-*

small lots." App. at 217–18.

*ney,* 785 F.2d 824, 826 (9th Cir.1986) (restitution amount cannot rest on "unitary scheme" but must be set forth in either indictment or plea agreement). We have recently reiterated this court's "approval of the broader conception of the term 'offense' in § 3651 that has been accepted in other circuits." *United States v. Hawthorne,* 806 F.2d 493, 497 (3d Cir.1986). In *Hawthorne,* we explained that "[u]nder this broader conception, the district court may properly order restitution in an amount exceeding that charged in the particular count(s) to which defendant pleaded guilty." *Id.*

In *Woods,* we distinguished *United States v. Buechler,* 557 F.2d 1002 (3d Cir. 1977), upon which Sleight relies, on the ground "that the restitution order there was not imposed as a condition of probation but as part of the defendant's sentence for conviction on a count that specifically mentioned an amount smaller than that for which restitution was ordered." 775 F.2d at 87. Moreover, in *Buechler,* the restitution order was based on presentence reports that were not part of the record. 557 F.2d at 1008.

*Woods, Martin* and *Hawthorne* all involved cases where the restitution was ordered following a guilty plea to less than all counts of the indictment. An even stronger basis for full restitution is presented where, as here, defendant was convicted following a trial at which there was evidence substantiating the full amount of the loss.

In other cases, the courts have held that the amount of restitution ordered after a trial need not be limited by the amount alleged in the indictment. Indeed, in *United States v. Harris,* 761 F.2d 394 (7th Cir.1985), the Seventh Circuit affirmed a restitution order in excess of the amount proven at trial, where the district court relied on the presentence report of the government's actual loss due to the fraud. The appellate court stated, "This judicial determination of the amount of loss was proper." *Id.* at 404. Similarly, in *United States v. McMichael,* 699 F.2d 193 (4th

Cir.1983), the court held, "[A]ctual damages directly caused by the illegal activity with which a defendant is charged may be ordered to be repaid under the Probation Act whenever the amount of the loss is legally determined. This is the rule regardless of the amount charged in the full indictment or in the individual counts on which a defendant is convicted." *Id.* at 195; *see also United States v. Tzakis,* 736 F.2d 867, 870–71 (2d Cir.1984) (affirming restitution for total damage caused by conspiracy even though convicted under only one count).

Given that Sleight conceded receiving payments in the amount of $152,484 as part of his arrangement with Bonner, that all the payments were made as part of a unitary scheme, and that the allegations in the indictment of kickbacks in unspecified amounts gave him notice that the government's evidence at trial would not be limited to the kickbacks specifically charged in the indictment, we hold that the order of restitution did not exceed permissible limits even though it required restitution for more than the specific amounts alleged in the indictment.

### IV.

Sleight's next objection to the restitution order is that it not only requires him to pay restitution of $152,484, representing the total of the 17 checks introduced at trial as evidence of kickbacks, but that it also requires him to pay interest at 8 percent on each of the checks from the dates they were issued.

The Federal Probation Act, like the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3579 and 3580, makes no reference to the payment of interest in connection with restitution. However, the absence of a specific provision for interest in a statute does not necessarily "manifest[ ] an unequivocal congressional purpose that the obligation shall not bear interest." *Rodgers v. United States,* 332 U.S. 371, 373, 68 S.Ct. 5, 7, 92 L.Ed. 3 (1947). We must therefore fashion the grant or denial of interest based on the congressional pur-

pose in imposing the particular statutory obligation and in light of general relevant principles. *Id.*

Although one circuit has impliedly affirmed the ordering of interest as part of restitution under the Federal Probation Act, *see United States v. Roberts*, 619 F.2d 1, 2 (7th Cir.1979), we have found no Court of Appeals that has directly addressed the issue of whether interest may be ordered as part of restitution under that statute, nor indeed under the VWPA.

The district court's order here requires payment of both post-judgment interest and pre-judgment interest. The considerations as to each are not necessarily the same and we will consider each separately. In *Rodgers*, which dealt with prejudgment interest, the Supreme Court referred to the general rule that a criminal penalty does not bear interest, 332 U.S. at 374, 68 S.Ct. at 7, citing *Pierce v. United States*, 255 U.S. 398, 405–06, 41 S.Ct. 365, 367–68, 65 L.Ed. 697 (1921). It explained that "denial of interest on criminal penalties might well be rested on judicial unwillingness to expand punishment fixed for a criminal act beyond that which the plain language of the statute authorizes." 332 U.S. at 374, 68 S.Ct. at 7. As a result, the *Rodgers* Court held that penalties incurred under the Agricultural Adjustment Act of 1938 as amended for marketing cotton in excess of fixed quotas should not bear interest for the period between the date the penalties became due and the date judgment was entered therefor.

■ Although we recognize that the question is not free from doubt, we believe that restitution ordered as a condition of probation is analogous to the penalties considered in the *Rodgers* case. While one

purpose of restitution under the Federal Probation Act is to make the victim whole, restitution, as we explained in the preceding section, is imposed as a part of sentencing and remains inherently a criminal penalty. Thus, even though interest might plausibly be considered to be part of I.C. P.'s actual loss, absent specific provision in the statute for prejudgment interest, we hold that prejudgment interest on the amount ordered to be paid as restitution may not be imposed under the Federal Probation Act.[4]

Postjudgment interest, however, stands on a different footing. Once a fine or penalty has been reduced to judgment, it does not differ in essence from a judgment arising out of civil proceedings. For example, in *Pierce v. United States*, 255 U.S. at 398, 41 S.Ct. at 365, the Court held that once a fine imposed on a corporate defendant had been reduced to judgment, it could be satisfied through a bill of equity against the stockholders after the corporation divested itself of all of its assets. Justice Brandeis drew on the common law which treated a fine reduced to judgment as "a debt to the King, of record; and it is payable to the King instanter." *Id.* at 402, 41 S.Ct. at 367 (quoting *Rex v. Woolf*, 2 Barn. & Ald. 609, 611, 106 Eng. Reprint 488).

A judgment for restitution can be viewed as a debt to the victim just as a judgment for a fine is considered to be a debt to the sovereign. Congress has provided that fines and penalties can be enforced in the same manner as civil judgments, and that postjudgment interest must be paid on any fine or penalty that is past due. *See* 18 U.S.C. § 3565(a)(1) and (c)(1). We need not decide whether a restitution order comes within the precise terms of that statute, because that statutory provision is merely

---

**4.** The Federal Probation Act, 18 U.S.C. § 3651, authorizing the sentencing judge to order "restitution and reparation to aggrieved parties for actual damages or loss ..." as a term of probation, grants the court discretion, in Judge Seitz' view, to impose so-called prejudgment interest in cases where the "equities" so dictate. Compare *Rodgers v. United States*, 332 U.S. 371, 373, 68 S.Ct. 5, 6, 92 L.Ed.3 (1947). He believes that this is such a case. Where, as here, the appel-

lant not only in effect deprived his principal of the use of the sums received by him, but also retained the unfettered use of such money until the entry of judgment, equity and good conscience dictate that interest should be assessed from the dates appellant received the payments. Otherwise, appellant will retain the benefit of his prejudgment use of his ill-gotten gain. See Restatement (Second) of Agency § 403 (1957).

reflective of the rule at common law. *Cf. Crooker v. United States*, 325 F.2d 318, 321 (8th Cir.1963).

Moreover, "the relative equities between the beneficiaries of the obligation and those upon whom it has been imposed," a consideration referred to in *Rodgers*, 322 U.S. at 373, 68 S.Ct. at 7, certainly weigh in favor of postjudgment interest. Although the district court permitted Sleight to make restitution during the five year probationary period, the date or dates within that period on which the judgment is paid is up to Sleight. If he were not required to pay postjudgment interest, he would have an economic incentive to delay such payment until the last possible opportunity, to the detriment of I.C.P. This seems inconsistent with the purposes that impelled Congress to provide for restitution.

■ We conclude that prejudgment interest is not authorized under the present statutory scheme, but that postjudgment interest should be awarded running from the date the judgment was reduced to a fixed amount. We need not decide the appropriate rate of postjudgment interest in this case, *compare* 18 U.S.C. § 3565(b)(2) (deferred payments of fines and penalties) *with* 28 U.S.C. § 1961 (postjudgment interest on civil judgments) because the government has not appealed the 8 percent rate set by the district court. Sleight has argued that the order fails to specify whether interest is simple or compounded, and the district court will have the opportunity to clarify how the 8 percent should be calculated on remand.

### V.

■ We turn next to Sleight's contention that the restitution order impermissibly provides for a restitution amount beyond his means to satisfy. Restitution may not be ordered in an amount that a defendant cannot realistically pay within the five year restitution period. *See United States v. Palma*, 760 F.2d at 480 (considering restitution under VWPA). Since the district court found that Sleight was capable of paying the restitution order, we inquire only whether the record supports the finding.

Sleight testified at the restitution hearing that he earns $57,200 per year and receives distribution payments from a limited partnership of approximately $1,500 per year. He owns a home with current value of approximately $98,000 on which the mortgage balance is about $50,000, land valued at $15,000, and a savings account of $6,000. He owes the Internal Revenue Service $30,000 plus interest and penalties for a disallowed tax shelter. Although Sleight is jointly obligated on a bank note totaling $144,000, that note is secured by a lien on properties owned by Bonner. In addition to expenses for food and clothing, Sleight makes mortgage payments of $944 per month, payments on a new car of $322 per month, monthly payments of $228 on a bank loan, and annual country club dues payments of $790.

■ In evaluating the reasonableness of the restitution order, we must keep in mind that it was directed as part of a probationary sentence. The district judge considered giving Sleight probation and restitution was "the most constructive thing for [Sleight] ... It was with restitution in mind that [Sleight] escaped a jail term." App. at 71. Moreover, since Sleight conceded receipt of the checks in the amount of $152,484, he benefitted financially from the funds he is being ordered to repay. It is not unreasonable to assume that some of his assets were acquired through those funds.

It is evident that Sleight is not living at a bare subsistence level. His purchase of a new car after his conviction and his membership in a country club attest to that. Furthermore, our deletion of prejudgment interest will substantially reduce the amount to be paid.

Based on the financial information provided by Sleight, we conclude that the district court did not abuse its discretion in ordering him to pay restitution. We see no reason why Sleight, a convicted criminal, should not be required to make appropriate

financial sacrifices, particularly since he escaped any imprisonment. In light of Sleight's substantial income, assets and comfortable lifestyle, and the reduced judgment, we find the restitution order was not unduly harsh.

## VI.

■ Finally, Sleight argues that restitution should not have been ordered in this case because his employer recovered insurance of $150,000. There is a dispute whether the insurance payment represented compensation for losses from Sleight's activities at issue here, as he argues, or whether it pertained to losses from an unrelated transaction to an I.C.P. customer for which Sleight was responsible, as the government argues. It appears that the payment may have been made to compensate for both, but the record suggests that the largest part of the claim submitted to the insurance company on behalf of I.C.P. was for losses unconnected with the kickbacks at issue here.

In any event, we believe that Sleight cannot get the benefit from any compensation paid to I.C.P. In *United States v. Lynch*, 699 F.2d 839 (7th Cir.1982), the Seventh Circuit rejected the argument that compensation from another source was a basis for overturning restitution ordered pursuant to 18 U.S.C. § 3651. The court stated:

> There is no basis in the statute or case law for concluding that the victim of a fraud is not an aggrieved party simply because he obtains compensation for his loss from another source. The County would have been no less an aggrieved party had a *private bonding company or other insurer reimbursed it for the losses suffered from the dishonesty of its employees.*

*Id.* at 845. (emphasis added).

The Federal Probation Act has no provision like that in the Victim and Witness Protection Act precluding restitution for a loss for which the victim has received compensation, but permitting restitution to be ordered to the person providing the compensation. *See* 18 U.S.C. § 3579(e)(1). In the absence of any such provision, indemnity *vel non* is a matter between I.C.P. and its insurance company.

## VII.

In summary, we conclude that a trial court sentencing a defendant pursuant to the Federal Probation Act may make the finding of actual loss upon which a restitution order must be based; that there was a factual basis for the district court's finding that I.C.P. suffered a loss of $152,484, the total of the kickbacks received by Sleight; that the amount of restitution that Sleight must pay is not limited by the specific amounts referred to in the indictment; that the restitution order may not include prejudgment interest on the amount ordered but that it should include postjudgment interest calculated from the date that the district court fixed the specific amount of the restitution; that the record supports the district court's factual finding that Sleight is financially able to make the restitution ordered; and that Sleight is not entitled to a credit for the insurance recovery paid to his employer.

For the reasons set forth above, we will affirm the district court's order except insofar as it directs payment of prejudgment interest, we will vacate the portion of the order that provides for interest, and we will remand this matter to the district court so that it may amend the order to provide for interest as set forth herein.