**UNITED STATES of America,
Appellees,**

v.

**Fred R. POLLAK, Appellant.**

**No. 87–1255.**

United States Court of Appeals,
Third Circuit.

Argued Nov. 3, 1987.

Decided April 21, 1988.

Rehearing Denied July 1, 1988.

Jack A. Meyerson (argued), Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., James M. Becker (argued), Michael R. Lazerwitz, Asst. U.S. Attys., Philadelphia, Pa., for appellees.

Before SLOVITER, BECKER, and COWEN *, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Fred B. Pollak has appealed from a conviction for wire fraud, 18 U.S.C. §§ 2, 1343, mail fraud, 18 U.S.C. §§ 2, 1341, conspiracy to commit mail fraud, wire fraud and interstate transportation of stolen property, 18 U.S.C. § 371, and the interstate transportation of stolen property, 18 U.S.C. §§ 2, 2314. We have considered all the issues raised by appellant with regard to his conviction for these offenses, and conclude that none have merit and the conviction must be affirmed.[1] We do, however, have difficulty with three interesting questions regarding the district court's imposition of restitution pursuant to the Probation Act,

---

* At the time this case was argued, Judge Cowen was a United States District Judge for the District of New Jersey sitting by designation. On November 16, 1987 he entered on duty as a United States Circuit Judge for the Third Circuit.

1. Pollak contends that the district court improperly admitted testimony concerning his involvement in the involuntary bankruptcy of a company to which his company had extended credit. He also argues that the district court's instructions (1) on the objects of the conspiracy, (2) on the *Pinkerton* theory of liability, and (3) in response to a certain jury question, were confusing and prejudicial. We conclude, however, that the admission of the "prior transactions" testimony and the instructions to the jury were proper.

18 U.S.C. § 3651 (1982 & Supp. III 1985),[2] as part of the sentence in this case. First, we must decide whether the district court erred in imposing restitution for transactions enumerated in counts upon which appellant was acquitted. We conclude that it did err.

Second, we must determine whether the district court improperly ordered restitution under § 3651 for legal fees and transportation and storage costs incurred by some of the victims in an effort to recover their property. We conclude that the district court erred on this point as well.

Finally, we must determine whether the district court improperly ordered appellant to pay $250,000 in restitution in the face of appellant's contention that he cannot reasonably be expected to pay this amount, and whether the district court made adequate findings as to appellant's ability to pay. We conclude that the district court did not make adequate findings justifying the conclusion that appellant was able to pay restitution in the amount of $250,000.

Although we reject other attacks on the district court's restitution order, we will, for the reasons indicated, vacate the judgment of sentence and remand this matter to the district court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

William Loch was the sole proprietor of Loch Industries, a small tool and dye shop in Tullytown, Pennsylvania. In October, 1982, Loch sold Loch Industries to Richard Estrada, appellant's co-defendant in the district court. At the time of the sale, and on behalf of Loch Industries, Estrada executed a note in favor of a company controlled by appellant, Certified Machinery Co., to repay $343,000 plus interest by December 1982 for a line of equipment, production rights to the equipment, and consulting and marketing services that Certified Machinery ostensibly had sold to Loch Industries. Estrada gave Certified Machinery a security interest in all of Loch Industries's assets, including after-acquired property, as security for the note. Certified Machinery recorded the security agreement in accordance with the Uniform Commercial Code.

Loch Industries thereupon began to order, for immediate delivery, new machinery from other vendors on credit, ostensibly to expand the company's operations to meet production requirements under newly acquired contracts. During November and December, 1982, Estrada ordered on credit approximately $2,000,000 worth of equipment on behalf of Loch Industries. In support of the credit purchases, Estrada provided as credit references appellant's company as well as various companies, operated by some of appellant's friends, which had never extended credit to Loch Industries. Several vendors requested security interests for the machinery they sold to Loch Industries, and Estrada, when placing the orders, promised to convey such an interest to each vendor. However, when the machinery was actually delivered, Estrada somehow managed in each instance to take possession of the equipment without ever signing away any security interests. All subsequent pleas from the defrauded vendors fell on deaf ears.

By December 1982, it was apparent that Loch Industries' newly acquired contracts, which had justified the rapid expansion of the company, were actually worthless. On December 16, 1982, appellant wrote to Estrada demanding payment in full on Loch Industries' note to Certified Machinery no later than December 21, 1982. According to appellant, the balance due on the note had risen to $557,884. The evidence at trial in this case showed, however, that the dollar value of the Loch Industries note to Certified Machinery, which was the basis for appellant's eventual claim to the machinery, had been artificially inflated, as

**2.** Section 3651 was repealed by the Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II, 98 Stat. 1987; however the repeal does not affect the district court's actions in this case because the repeal was not effective until November 1, 1987. *See* Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985).

explained in the margin.[3]

In response to appellant's demand for payment on the note, Estrada informed appellant that Loch Industries had to default on its obligation to Certified Machinery. Meanwhile, employees of Loch Industries began shipping some of the newly purchased machinery from the company's Pennsylvania facilities to Illinois and Texas.

Appellant, acting as a secured creditor of Loch Industries, announced a U.C.C. sale of the company's assets, including its valuable new machinery, and then sent one of his employees to display and then to auction the items. At the public sale on December 29, 1982, his own employee declared appellant the high bidder for the machinery and equipment. After the sale, appellant personally oversaw the removal of more machinery from the Loch Industries warehouse in Huntingdon Valley, Pennsylvania, and one fully loaded trailer left for Chicago. Before other trucks could depart, however, the defrauded vendors (now angry creditors of Loch Industries), fearful of losing the machinery that they sold to Estrada but had not yet been paid for, arrived on the scene and blocked the exits. During the ensuing commotion, appellant identified himself to the creditors as "John Williamson." Ultimately the creditors obtained a restraining order to prohibit the removal of additional machinery.

After the sale, despite promises to return to Huntingdon Valley to make recompense, Estrada in effect disappeared and defaulted in the civil litigation that followed. Appellant unsuccessfully defended the civil litigation on the grounds that he was a secured creditor and therefore had priority over the unsecured machinery dealers. In January, 1983 the Pennsylvania court that had issued the restraining order on the day of appellant's U.C.C. sale also issued a recision order, allowing the unsecured creditors to reclaim their machinery which remained at the Huntingdon Valley warehouse. The evidence showed that even after the recision order, appellant tried to seize a grinder which Estrada had ordered on credit and delivered to a local warehouse other than the one at Huntingdon Valley. Appellant also continued to sell the machinery and equipment taken from Huntingdon Valley that Estrada had ordered on credit.

In spite of the successful civil litigation, many of the vendors never completely recovered from Loch Industries for their losses. It is these losses that form the bulk of the restitution awards at issue in this case.

On July 9, 1985, a grand jury returned a nineteen count indictment against appellant and Estrada, charging them each with various counts of mail fraud, wire fraud, interstate transportation of stolen property, and conspiracy to commit each of the above.[4]

---

3. This alleged debt consisted of three major items, namely, production rights to an item called a "Starwheel Feeder" valued at $175,000, production rights to an item called the "Smart System" valued at $262,000, and production rights to an item known as the "Deka Boring Head and Boring Bar" valued at $90,000.

The evidence showed that on the day before appellant sold rights to the "Starwheel Feeder" to Estrada on credit for $175,000, he had acquired it for $25,000 from Donald Bachner. Similarly, appellant had acquired the "Smart System" from Bachner for $25,000 on the same day that he sold it on credit to Estrada for $262,000. Bachner himself had bought the item only two years earlier for $9,000. Appellant "sold" the "Deka Boring Head and Boring Bar" to Loch Industries for $90,000, even though he never even had acquired the rights to it. Appellant also generated a Certified Machinery invoice to Estrada's company which showed the

sale of a radial drill for $15,750 that in fact had been discarded years earlier for scrap value of less than $100. In short, the security interest that Estrada had granted appellant in the assets of Loch Industries was vastly inflated.

4. Both defendants were charged in all nineteen counts. Count 1 charged a conspiracy to commit mail fraud, wire fraud and interstate transportation of stolen property, in violation of 18 U.S.C. § 371. Counts 2, 3, 4, 6, 7, 8, 9, 10, 13, and 14 charged mail fraud in the acquisition of machinery by Loch Industries from ten different vendors, in violation of 18 U.S.C. §§ 1341 and 2. Counts 5, 11, 12, 15 and 18 charged wire fraud in the acquisition of machinery from five additional vendors, in violation of 18 U.S.C. §§ 1343 and 2. Counts 16, 17 and 19 charged the interstate transportation of stolen property, in violation of 18 U.S.C. § 2314. The interstate transportation counts pertained to the pieces of equipment that had been removed from Loch

Appellant and Estrada were tried before a jury in June and July, 1986. On July 11, 1986, the jury found appellant guilty of the conspiracy charged in Count 1, guilty of six counts of mail fraud involving vendors named in Counts 2, 3, 4, 8, 10 and 13, guilty of four counts of wire fraud set forth in Counts 5, 11, 15, and 18 and guilty of all three counts of interstate transportation of stolen property. The jury also found Estrada guilty of the conspiracy charged in Count 1 and four counts of mail and wire fraud. Most relevant for purpose of this appeal, appellant was acquitted on Counts 6, 7, 9, 12, and 14, charging mail fraud and wire fraud and naming several specific vendors.

The district court ordered a presentence investigation and report and received sentencing memoranda from the parties. The government filed a memorandum which identified twenty-five victims of the defendants' unlawful conduct and their total losses. The government reported that the total loss to the victims was $397,262.85. Appellant filed a memorandum in response to the government's request for restitution. Appellant argued that the government improperly sought restitution for parties who were not "aggrieved" within the meaning of § 3651, for incidental costs and losses not caused by the offense for which appellant was convicted, and for claims underlying counts for which appellant was acquitted.

On April 24, 1987, the district court sentenced appellant to five years imprisonment on Count 1 and three years imprisonment on Count 2, to run consecutively, for a total term of imprisonment of eight years. The district court also sentenced appellant to five years probation on Counts 3, 4, 5, 8, 10, 11, 13, 15, 16, 17, 18 and 19, to commence after the term of incarceration. The court further ordered, as a condition of probation, that appellant pay restitution to the best of his financial ability. Stating that appellant could not realistically be expected to pay the government's "correct figure" of $397,265.87, the district court directed that appellant "make restitution during [the] period of probation in the sum of $250,000 to be allocated proportionately among the victims listed in the Government's memorandum." J.A. at 1156. Appellant filed a timely notice of appeal from this sentence.

## II. RESTITUTION ON ACQUITTED COUNTS

Appellant first contends that the district court improperly ordered restitution on three counts of the indictment for which he was acquitted.[5] To address this issue, we must examine the provisions of the Probation Act, 18 U.S.C. § 3651, which authorizes the district court to order restitution as a condition of probation in this case.[6]

The Probation Act grants district courts broad discretion to design probationary conditions appropriate for each particular case. The statute provides, in part, that a district court,

> when satisfied that the ends of justice and the best interests of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the de-

Industries' Pennsylvania facility to Texas and Illinois.

5. Specifically, the district court ordered restitution to two parties named in three counts for which appellant was acquitted. Restitution was ordered to Concord–Soraluce Machine Tool Company, which was identified as a victim of the scheme to defraud in Count 12 (wire fraud), and for W.B. Dean & Son, which was identified as a victim of the scheme to defraud in Counts 7 and 9 (mail fraud). Vendors named in the other counts upon which appellant was acquitted recovered their machinery and therefore were not awarded any restitution. The court's initial total restitution award included $65,284

for Concord–Soraluce and W.B. Dean, plus $9,500 for Concord–Soraluce's "incidental expenses," see infra, Part III. These awards were reduced proportionately when the court lowered the total restitution award from $397,265.87 to $250,000 based on Pollak's ability to pay.

6. The Victim and Witness Protection Act, 18 U.S.C. § 3579, which allows a federal court to order restitution even if the convicted defendant is not placed on probation, is not applicable in this case; it applies only to offenses occurring after January 1, 1983. See United States v. Martin, 788 F.2d 184, 188–89 (3d Cir.1986).

fendant on probation for such period and upon such terms and conditions as the court deems best.

18 U.S.C. § 3651.

The statute also lists three specific conditions relating to monetary payments that the district court may impose. As one of these conditions, the defendant "[m]ay be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had." *Id.* Appellant argues that this language should be construed to limit restitution to only those counts for which appellant was convicted, and that he cannot be made to pay restitution to individual victims named in counts upon which he was acquitted.[7]

The government, however, contends that Pollak was convicted of a "unitary fraud scheme," and that the individual acquittals on several counts of mail and wire fraud merely reflect that the jury did not find sufficient evidence that the particular *communication* described in each individual count took place. Consolidated Brief for Appellee at 47. The government asserts that "[a] guilty verdict as to any one of the mail or wire fraud counts necessarily implies that the jury found the existence of the unitary scheme described in the indictment." *Id.* And because, in the government's view, the individual counts were merely acts in furtherance of the scheme, the government argues that conviction on any one of those counts alone should be sufficient to support the district court's order of restitution "for actual damages or loss caused by the offense for which conviction was had." 18 U.S.C. § 3651.

In the government's view, in cases involving a scheme to defraud where individual counts of the indictment are simply acts in furtherance of a unitary scheme, the district court, as a condition of probation on any one count, may order restitution for the full amount of the loss caused by the overall scheme, regardless of whether the defendant has been acquitted on a particular count.

---

7. The relevant counts upon which Pollak was acquitted read as follows:

COUNT SEVEN
THE GRAND JURY FURTHER CHARGES THAT:
1. Paragraphs 1 through 17 of Count Two of this indictment are realleged and incorporated herein by reference.
2. On or about November 10, 1982, in the Eastern District of Pennsylvania and elsewhere, for the purpose of executing the above scheme and artifice, defendants
FRED POLLAK AND
RICHARD ESTRADA
did knowingly cause to be delivered by mail, according to the direction thereon, correspondence, that is, three purchase orders for machinery, from Loch Industries, Incorporated, Bucks County, Pennsylvania, to W.B. Dean Machinery Company, 59 N. Allentown Road, P.O. Box 126, Tylersport, Pennsylvania.
In violation of Title 18, United States Code, Section 1341 and 2.
J.A. at 36.

COUNT NINE
THE GRAND JURY FURTHER CHARGES THAT:
1. Paragraphs 1 through 17 of Count Two of this indictment are realleged and incorporated herein by reference.
2. On or about November 12, 1982, in the Eastern District of Pennsylvania and elsewhere, for the purpose of executing the above scheme and artifice, defendants

FRED POLLAK AND
RICHARD ESTRADA
did knowingly cause to be delivered by mail, according to the direction thereon, correspondence, that is two purchase orders for machinery, from Loch Industries, Incorporated, Bucks County, Pennsylvania to W.B. Dean Machinery Company, 59 N. Allentown Road, P.O. Box 126, Tylersport, Pennsylvania.
In violation of Title 18, United States Code, Sections 1341 and 2.
J.A. at 38.

COUNT TWELVE
THE GRAND JURY FURTHER CHARGES THAT:
1. Paragraphs 1 through 17 of Count Two of this indictment are realleged and incorporated herein by reference.
2. On or about November 17, 1982, in the Eastern District of Pennsylvania and elsewhere, for the purpose of executing the above scheme and artifice, defendants
FRED POLLAK AND
RICHARD ESTRADA
did transmit and cause to be transmitted by means of wire communication in interstate commerce certain signs, signals and sounds, that is, a telephone call from Loch Industries, Incorporated, Huntingdon Valley, Pennsylvania to Concord–Soraluce Machine Tool Company, Kenilworth, New Jersey.
In violation of Title 18, United States Code, Sections 1343 and 2.
J.A. at 41.

This court has held that a district court " 'lacks power to order restitution in an amount greater than that involved in the particular offense for which defendant was indicted and convicted.' " *United States v. John Scher Presents, Inc.*, 746 F.2d 959, 963 (3d Cir.1984) (quoting *United States v. Buechler*, 557 F.2d 1002, 1007 (3d Cir. 1977)); *see also United States v. Gering*, 716 F.2d 615, 622–25 (9th Cir.1983); *United States v. Johnson*, 700 F.2d 699, 701 (11th Cir.1983). However, as the government correctly points out, "there is substantial precedent in this court that upholds restitution orders for amounts in excess of the dollar amount specifically alleged in the counts for which defendant was convicted." *United States v. Sleight*, 808 F.2d 1012, 1018 (3d Cir.1987). In *United States v. Woods*, 775 F.2d 82 (3d Cir.1985), for example, we affirmed a restitution order for the full amount of loss to all investors aggrieved by the defendant's fraud, even though the defendant pleaded guilty to only two counts of a multiple count indictment for mail fraud. We stated that

> [t]he offense [in *Woods* ] is a scheme to defraud, and each count is simply an act in furtherance of the unitary scheme; therefore, establishing that a single count caused a specific loss would be difficult. It is the overall scheme that is central to all the counts and gives rise to the victims' financial loss.

*Id.* at 88.[8] *Accord United States v. Hawthorne*, 806 F.2d 493, 497 (3d Cir.1986).

*Woods, Hawthorne* and *United States v. Martin*, 788 F.2d 184 (3d Cir.1986), involved situations where restitution was ordered following a guilty plea. In *Sleight*, we found a particularly strong basis for full restitution, under § 3651, because the defendant was convicted of conspiracy to commit mail fraud and devising a scheme to commit mail fraud, following a trial at which there was evidence substantiating the full amount of the loss. 808 F.2d at 1018–19. However, none of the cases in which we allowed restitution in an amount exceeding that charged in the indictment

involved the situation presented here, where the defendant was *acquitted* on some of the counts. Here, the government drafted its indictment so that each mail and wire fraud count sought to bring within the alleged scheme to defraud an additional machinery vendor. Therefore, when the jury acquitted on some, but not all, of the mail and wire fraud counts, its verdict was an expression of its view as to the contours of the scheme.

Where the jury has acquitted on certain mail or wire fraud counts, no prior decision has ever sanctioned an award of restitution to a party named in the specific count for which the jury acquitted. In *United States v. Brown*, 699 F.2d 704 (5th Cir.1983), the defendant, a county commissioner, was convicted of four counts of Hobbs Act extortion, two counts of conspiracy, and thirty-two counts of mail fraud, developing out of a kickback scheme for purchases of supplies and merchandise. Notwithstanding the broad conspiracy and mail fraud allegations, the Fifth Circuit limited the award of restitution by holding that "[t]he district court was empowered to require Brown to make restitution for the amount the vendors and salesmen received from Bowie County's treasury as well as the amount he received *but only for each count upon which he was convicted.*" *Id.* at 711 (emphasis added) (citation omitted).

▪ Count 2 of the indictment in this case charged a scheme to defraud and alleged that in furtherance of that scheme to defraud a mailing was received by Loch Industries from Komatsu America Corporation. Counts 7, 9 and 12 of the indictment charged similar mail fraud schemes to that charged in Count 2, but alleged that in furtherance of these mail fraud schemes, mailings were made to W.B. Dean & Son and Concord-Soraluce Machine Tool Co. In all other respects, the schemes charged in Counts 7, 9 and 12 are identical to the scheme charged in Count 2. The jury's acquittal on Counts 7, 9 and 12 thus could only mean that the mailings to W.B. Dean

---

8. Likewise, in *United States v. Martin*, 788 F.2d 184, 189 (3d Cir.1986), we held that restitution under the Victim and Witness Protection Act, 18 U.S.C. § 3579, need not be limited to the specific amount alleged in the mail fraud count to which the defendant pled guilty.

and Concord-Soraluce were considered outside the boundaries of the scheme found by the jury. Under these circumstances, the court could not properly hold that either W.B. Dean & Son or Concord-Soraluce was "an aggrieved party" whose loss was "caused by the offense for which conviction was had" within the meaning of § 3651.

In sum, because the individual mail and wire fraud counts in this case incorporated by reference the scheme to defraud, acquittal on some of the counts could indicate, contrary to the government's position, that the "offense" in this case, including the scheme to defraud, was not as pervasive as that alleged in the indictment. The fact of an acquittal on some of the individual counts, therefore, fundamentally distinguishes this situation from other "unitary scheme" cases where we have allowed restitution for the full amount of the victims' losses. Were we to conclude otherwise, the "unitary scheme" exception carved out in *Woods* and its progeny would swallow the general rule that restitution cannot be ordered in amounts "'greater than that involved in the particular offense for which defendant was indicted *and convicted.*'" *See John Scher Presents*, 746 F.2d at 963 (citations omitted) (emphasis added).

■ Therefore, we conclude that the district court improperly ordered restitution on counts for which appellant was acquitted. We add only that a contrary result would be at odds with the significance of an acquittal in our criminal jurisprudence.[9]

## III. RESTITUTION FOR LEGAL FEES AND TRANSPORTATION AND STORAGE COSTS INCURRED TO RECOVER THE VICTIMS' PROPERTY

■ Appellant next contends that, as to persons determined to be victims of the scheme, the award of restitution cannot include legal fees and transportation and storage costs incurred in efforts to recover

---

**9.** Appellant also contends that the district court improperly awarded restitution to alleged victims of the offense other than the vendors identified in the mail and wire fraud counts for which appellant was convicted. Specifically, appellant contends that the district court improperly awarded restitution to various trade creditors of Loch Industries and to William Loch. He argues that the parties identified in the conspiracy count of the indictment are not entitled to restitution because the district court imposed a sentence of incarceration on the conspiracy count, and restitution and incarceration may not be ordered on the same count pursuant to § 3651. *United States v. Hawthorne*, 806 F.2d 493, 495 n. 2 (3d Cir.1986).

The government again argues that the indictment should be "read as a whole," that the "unitary fraud scheme" is alleged in the conspiracy, and that the first mail fraud count is incorporated into the remaining individual mail and wire fraud counts and can be read into the interstate transportation counts. Therefore, "the district court could properly order restitution for the full amount of loss caused by the unitary scheme as a condition of probation imposed on any one of the above counts." Government's Brief at 46.

We reject appellant's contention that restitution cannot be ordered for William Loch and the trade creditors of Loch Industries. In *Hawthorne* we recognized that all of the victims of a defendant's unitary scheme to defraud may not have been identified, and therefore the full amount of the damages caused by the offense may be unknown at the time the defendant

pleads guilty. Nevertheless we stated that "the defendant is not prejudiced by the absence of an assessment of the exact amount or upper limit of a potential restitution order" because, in any event, "'the amount of restitution or reparations ordered may be only for such amount of actual damage or loss as has been ascertained with certainty by a court or by stipulation of the parties.'" *Hawthorne*, 806 F.2d at 498 n. 10 (quoting *John Scher Presents*, 746 F.2d at 963); *see also United States v. Kutner*, 631 F.Supp. 126 (E.D.Pa.1986) (awarding restitution to all victims of defendant's scheme to defraud, even those unnamed in the mail fraud indictment).

*Hawthorne* suggests that restitution may be ordered pursuant to § 3651 even to victims of the unitary scheme who were unnamed in the indictment, as long as the amount of restitution ordered is for the amount of actual damage which has been ascertained with certainty by the court. In this case, the government submitted a detailed, itemized list, as part of its sentencing memorandum in the district court, identifying all of the victims and their reported losses. At the time of sentencing, the district court found that the government had reported "the correct figure" in its sentencing memorandum. J.A. at 1156. Accordingly, we conclude that the district court was authorized to award restitution under § 3651 to William Loch and the trade creditors of Loch Industries for actual damages or loss caused by the overall scheme to defraud.

the victims' property.[10]  This issue requires us to decide whether these monetary amounts constitute "actual damages or loss caused by the offense" within the meaning of § 3651.

The government argues that to exclude these incidental expenses from "actual damages or loss" would frustrate an important policy underlying the district court's restitution power, that is, "to make the victim whole," *Sleight,* 808 F.2d at 1020. The government rejects appellant's "narrow interpretation" of "actual damages or loss" under § 3651, Consolidated Brief for Appellee at 48, and relies on our opinion in *Sleight,* where we held that the defendant purchasing agent's profits in the form of kickbacks, which the victim company would have realized as lower prices on its cocoa purchases were it not for the fraud, "fairly represented [the victim company's] damages" for purposes of restitution under § 3651. 808 F.2d at 1018. In *Sleight,* we also allowed postjudgment interest on restitution. *Id.* at 1021. If these items are allowable under § 3651, the government argues, then surely the items in this case—the sales prices for the victims' unrecovered machines and the victims' expenses in trying to recover the machines—should also be allowable as "actual damages or loss."

Section 3651 lists three types of monetary payments that a district court can impose as a condition of probation: fines, provision of support for persons for whom defendant is legally responsible, and, of course, restitution.  Although this court has broadly interpreted the term "offense" in § 3651, we also have stated that the monetary payment provisions of § 3651 must be narrowly construed. *John Scher Presents,* 746 F.2d at 963. In *John Scher Presents,* we held that the monetary payment provisions of § 3651 are not "merely illustrative" but restrict the district court's

authority to impose monetary conditions of probation not described in the Act. *Id.* at 964.  Thus we held that the district court may not require a corporate defendant, as a condition of probation under § 3651, to "pay money to charitable organizations in no way aggrieved by the offense." *Id.*

Although we recognized in *Sleight* that one purpose of restitution under the Probation Act is to make the victim whole, we also explained that restitution "is imposed as part of sentencing and remains inherently a criminal penalty." *Sleight,* 808 F.2d at 1020.  In that case, therefore, we held that even though prejudgment interest might plausibly be considered part of the victim's "actual loss," such interest could not be imposed on an amount ordered to be paid as restitution under § 3651, absent a specific provision in the statute for prejudgment interest. *Id.*  In part, our denial of prejudgment interest in *Sleight* rested on "judicial unwillingness to expand punishment fixed for a criminal act beyond that which the plain language of the statute authorizes." *Id.* (quoting *Rodgers v. United States,* 332 U.S. 371, 374, 68 S.Ct. 5, 7, 92 L.Ed. 2 (1947)).

Most of the courts of appeals that have interpreted the meaning of "actual damages or loss caused by the offense" have also construed this language narrowly. The Second, Fourth and Ninth Circuits have held that restitution under § 3651 is proper only for losses *directly* resulting from the defendant's offense. *See United States v. Tyler,* 767 F.2d 1350, 1351 (9th Cir.1985); *United States v. McMichael,* 699 F.2d 193, 195 (4th Cir.1983); *United States v. Burger,* 739 F.2d 805, 811 (2d Cir.1984). The Fifth and Eighth Circuits have held that restitution under § 3651 cannot be ordered to repay the government for the cost of defendant's court-appointed counsel. *See United States v. Missouri Valley Con-*

---

**10.** The district court ordered restitution to the victims for "incidental expenses" incurred in attempts to recover their property.  The losses due to "incidental expenses" were reported in the government's sentencing memorandum. The following examples are representative: Anilam Electronics—$802.00 for legal fees; Concord/Soraluce (Danobat)—$9,500.00 for attor-

neys' fees plus costs; W.B. Dean & Son—unreported amount for freight costs, legal fees and litigation costs; Gomiya (U.S.A.), Inc. balance of $8,600.38 for attorneys' fees, litigation costs and transportation and storage costs. Total restitution requested by the government, including such incidental expenses, equalled $397,262.85.

*struction Co.,* 741 F.2d 1542, 1547 (8th Cir.1984); *United States v. Jimenez,* 600 F.2d 1172, 1174–75 (5th Cir.), *cert. denied,* 444 U.S. 903, 100 S.Ct. 216, 62 L.Ed.2d 140 (1979); *but cf. United States v. Gurtunca,* 836 F.2d 283, 287–88 (7th Cir.1987) (district court was authorized, under § 3651 and the Criminal Justice Act, 18 U.S.C. § 3006A, to condition defendant's probation on reimbursing the government for court-appointed attorneys' fees); *United States v. Santarpio,* 560 F.2d 448, 455–56 (1st Cir.) (same), *cert. denied,* 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977).

No court of appeals has directly confronted the issue, presented here, whether attorneys' fees and other expenses incurred by a private party to recover its property constitute "actual damages or loss caused by the offense" within the meaning of § 3651. However, in *United States v. Kutner,* 631 F.Supp. 126, 132 (E.D.Pa.1986), the district court held that victims' losses "incurred from advertising, traveling or other similar expenses" are not part of the actual damages caused by the offense for which the defendant was convicted. Likewise, in *United States v. Trettenaro,* 601 F.Supp. 183, 185 (D.Colo. 1985), the court determined that expenses connected with the recovery of stolen property are not compensable under the Victim and Witness Protection Act.

Similarly, some courts of appeals have read § 3651 to preclude reimbursement to the government for the costs of investigation and prosecution, even when the government was the victim of the offense. *See, e.g., United States v. Vaughn,* 636

F.2d 921 (4th Cir.1980) (construing § 3651 to preclude reimbursement to the government of the costs of investigating defendant's tax evasion offense, and implying that restitution to a private party would be limited to the amount of money or the value of property of which the victim had been defrauded).[11] *Cf. United States v. Kenney,* 789 F.2d 783 (9th Cir.1986) (restitution under the Victim and Witness Protection Act could not encompass reimbursement to bank that had been robbed for the wages of its employees who testified at trial and pretrial proceedings, but restitution of a technician's fee for removing film from a surveillance camera was warranted as a direct cost of the robbery).

▪ We conclude that restitution of recovery expenses to victims of the scheme to defraud is not authorized by § 3651. Even though the recovery expenses incurred by the victims in this case might plausibly be considered part of their losses, such expenses are not directly caused by the offense for which appellant was convicted and are too remote from the offense to support an award of restitution under § 3651. This conclusion is consistent with this court's view that the provisions of § 3651 should be narrowly construed whenever the probationary condition sought to be imposed is the payment of money. *John Scher Presents,* 746 F.2d at 963–64. We thus hold that the district court exceeded its discretion in ordering restitution, as a condition of probation, for the victims' incidental expenses connected with the recovery of their property.[12]

11. The *Vaughn* court stated that the costs of investigation resulted only indirectly from the offense of income tax evasion. The court drew a distinction

> between actual damages or loss to the person who is a victim of crime and the costs of investigation and prosecution. Of course, where, as here, the crime is one against the government and it is one of income tax violation, the two types of loss seem more closely related.... Were the crime one of fraud practiced upon a third person, the distinction would be more pronounced. In that event, the "actual damages or loss caused by the offense" would clearly be the amount of money or the value of the property of which the

> victim had been defrauded. The costs to the government in performing its function of investigation and prosecution, however, would seem too remote from the offense itself to be recoverable as a condition of probation.
>
> 636 F.2d at 923.

12. However, we reject appellant's contention that the district court improperly awarded the machinery vendors "lost profits" connected with their transactions with Loch Industries. Specifically, the district court ordered appellant to pay some of the vendors the amounts indicated on unpaid invoices for material and equipment sold to Loch Industries and never recovered. These amounts, representing the sales prices for the victims' unrecovered machines, clearly rep-

## IV. ADEQUACY OF THE DISTRICT COURT'S FINDINGS ON ABILITY TO PAY

■ Finally, appellant contends that the district court improperly ordered appellant to pay $250,000 in restitution that he could not reasonably be expected to pay. In particular, appellant contends that "the record is silent as to how the trial court concluded that the appellant would be able to make restitution in the amount of $250,-000.00 once he completes an eight year term of incarceration." Appellant's Brief at 25. The district court did not make specific factual findings as to appellant's ability to pay $250,000. After stating that $397,265.87, which the government reported was the victims' total loss, was "a correct figure," the district court merely stated that appellant could not realistically be expected to pay that amount. J.A. at 1156. The court then ordered that appellant make restitution of $250,000, to the best of his financial ability, to be apportioned among the reported victims.

The government acknowledges that "[r]estitution may not be ordered in an amount that a defendant cannot realistically pay within the five year restitution period."[13] *Sleight*, 808 F.2d at 1021 (citation omitted). However, the government contends it is apparent that the district court found that $250,000 was an amount realistically within appellant's financial reach.[14] According to the government, this court's function is to determine whether the district court's finding is supported by the record, and hence whether the restitution order is within the limits of the district court's discretion. *See id.* at 1021–22.

Appellant's position, as recounted to his probation officer, is that his net worth is only $27,000, that he faces an eight year prison term, and that he cannot make restitution payments of $250,000.

The district court made only a conclusory finding as to appellant's ability to make restitution. Under our jurisprudence, however, that will not do. In similar situations where the Victim and Witness Protection Act applies, we have invoked our supervisory power to require district courts to make specific factual findings as to these matters before imposing restitution, in order to facilitate meaningful appellate review of the district court's discretionary ruling. *See United States v. Johnson*, 816 F.2d 918, 924 (3d Cir.1987); *United States v. Palma*, 760 F.2d 475, 480 (3d Cir.1985). We see no reason not to require specific factual findings in this case, even though

---

resent "actual damages or loss caused by the offense" for which appellant was convicted. Similarly, in *Sleight*, we held that the defendant's lost profits, which the corporate victim could have realized in the form of lower prices on its cocoa purchases, fairly represented the victim's damages. That essentially is the case here.

**13.** Under § 3651, "[t]he period of probation, together with any extension thereof, shall not exceed five years."

**14.** At trial, the government presented evidence showing that as of October 1, 1982, Pollak had personal assets worth $2,177,922, that his company, Certified Machinery, had assets worth $1,131,470 and that although his fraud scheme was not completely successful, Pollak did obtain valuable machinery and other equipment which was neither paid for nor recovered by vendors. Pollak himself testified at trial that during prior years he had earned an average annual income of between $250,000 and $300,000. He enjoyed a lavish lifestyle, including ownership of luxury automobiles, such as a Mercedes–Benz, a Rolls–Royce, and a Jaguar.

Although in his trial testimony appellant described himself as "semi-retired," he acted as a consultant to Custom Automated Machinery and Plastic Innovators, Inc., two companies that he had established for his daughters. The government presented evidence at sentencing that between indictment and sentencing in this case Pollak used these two companies to defraud an Illinois bank and the U.S. Small Business Administration of loans worth approximately $400,000, which he used for his personal benefit. In addition, the government showed that in March 1987, Pollak sold certain assets of a company known as "Cam–Cad" from which he and his wife stood to realize approximately $400,000. Finally, there is some, albeit controverted, evidence in the record showing not only that Pollak had substantial financial resources as of the time of his sentencing, but also that he has an earning potential upon his release from prison. At the time of sentencing, he was fifty-two and in good health. He had been in the machinery business for thirty years and for much of that time had been self-employed, regularly earning an annual income in excess of six figures.

restitution was awarded under the Probation Act. *Cf. Sleight,* 808 F.2d at 1021–22 (record evidence must support finding that defendant is capable of paying the restitution ordered). Because the district court did not make adequate findings with respect to appellant's ability to pay $250,000, we cannot determine whether the district court abused its discretion in imposing restitution for this amount, hence we must vacate the sentence insofar as it grants restitution and remand with instructions to make factual findings to support any award of restitution the court may impose.

## V. CONCLUSION

For the foregoing reasons, we will affirm appellant's conviction, but we will vacate the judgment of sentence insofar as it grants restitution and remand this matter to the district court for further proceedings consistent with this opinion.