**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-2836
_____

UNITED STATES OF AMERICA,

v.

MICHAEL NORWOOD,

Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. Action No. 1-96-cr-00232-001)
District Judge: Honorable Joseph E. Irenas
_____

Submitted Under Third Circuit LAR 34.1(a)
March 18, 2014
_____

Before: CHAGARES, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

(Opinion Filed: May 13, 2014 )

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

1

Following a jury trial, Appellant Michael Norwood ("Norwood") was convicted of bank robbery, armed bank robbery, carjacking, two counts of use of a firearm in relation to a crime of violence (one for robbery and another for carjacking), and possession of a firearm by an armed career criminal. Norwood was initially sentenced in 1997 and was resentenced in 1999, April 2013 and June 2013. Norwood appeals his most recent resentencing on a variety of grounds.

For the reasons discussed below, we will affirm the judgment of conviction.

## I. BACKGROUND

Because we write primarily for the parties who are familiar with the facts and procedural history, we recount only the essential facts.

On April 12, 1996, Norwood entered the Amboy National Bank in Old Bridge, New Jersey and walked out with over $15,000 that he had demanded from the bank tellers, while brandishing a handgun. Shortly thereafter, Norwood approached a motorist, demanded that he get out of his car at gunpoint, and drove away. Later, the motorist's vehicle was recovered, together with Norwood's handgun. The following day the police arrested Norwood and an accomplice.

While the procedural history is rather extensive, a truncated overview is warranted. At Norwood's first trial, Norwood waived his right to counsel and represented himself. Assistant Federal Public Defender ("AFPD") Lori Koch served as standby counsel. A mistrial was declared when the jury was unable to reach a verdict.

2

At the bifurcated retrial Norwood represented himself again. The jury found Norwood guilty of bank robbery, armed bank robbery, carjacking and two counts of use of a firearm in relation to a crime of violence (one for robbery and another for carjacking). In the second half of the bifurcated trial, a jury found Norwood guilty of possession of a firearm by an armed career criminal. Based on these convictions, Norwood received an aggregate prison term of life plus 25 years.

After this Court rejected Norwood's first appeal, *United States v. Norwood*, 142 F.3d 430 (3d Cir. 1998), Norwood filed a petition for collateral review pursuant to 28 U.S.C. § 2255. The District Court granted the petition as to a sentence miscalculation but denied the other claims. At a resentencing hearing, Norwood raised six additional claims and the District Court denied each of them. Norwood appealed both the partial denial of his first § 2255 motion, docketed by this Court as No. 99-5510, and the denial of his six additional claims, docketed by this Court as No. 99-5992. After consolidating the two appeals, this Court concluded that it lacked jurisdiction to consider the claims in either appeal and therefore dismissed both. *Norwood v. United States*, 229 F.3d 1138 (3d Cir. 2000).

In September 1999, the District Court granted Norwood's pro se motion for the appointment of new counsel, other than AFPD Koch, finding that an actual conflict existed because Norwood filed a complaint against AFPD Koch with the New Jersey Supreme Court's Office of Attorney Ethics. (*See* Supp. App. 132-33.)

3

In June 2006, Norwood filed a second § 2255 petition, which was also denied by the District Court. Norwood did not appeal the District Court's order.

Norwood's third § 2255 petition, which was filed in December 2010 and claimed for the first time that his sentences for bank robbery and armed bank robbery violated double jeopardy, was denied by the District Court; however, this Court ultimately vacated and remanded the District Court's order because Norwood's conviction for bank robbery (Count One) and armed bank robbery (Count Two) did in fact violate the Double Jeopardy clause. *Norwood v. United States*, 472 F. App'x 113 (3d Cir. 2012).

On remand, in April 2013, the District Court issued an amended judgment on certain counts of the indictment without holding a formal resentencing hearing. On appeal, the Government conceded that the District Court erred and that Norwood was entitled to a de novo resentencing hearing.

Prior to this resentencing hearing, the District Court appointed AFPD Christopher O'Malley to represent Norwood. Thereafter, Norwood moved to disqualify AFPD O'Malley, arguing that his previous conflict with AFPD Koch should be imputed to the entire Federal Public Defender's Office. The District Court denied the motion. Norwood then filed a motion to proceed pro se, which the District Court granted. In June 2013, the District Court held the resentencing hearing (the "June 2013 Resentencing") and resentenced Norwood to an aggregate term of imprisonment of five hundred months. Norwood now appeals the sentence, the denial of his motion to disqualify AFPD

4

O'Malley, and the grant of his motion to proceed pro se.

## II.    **JURISDICTION**

The District Court had jurisdiction under 18 U.S.C. § 3231.  This Court has jurisdiction over the challenge to the sentence under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## III.    **ANALYSIS**

### A.  *Waiver of the Right to Counsel*

"Our review of whether a defendant's waiver of counsel was knowing and intelligent is plenary as it involves only legal issues."  *United States v. Stubbs*, 281 F.3d 109, 113 n.2 (3d Cir. 2002).

Before a criminal defendant can be permitted to proceed pro se, a court must make certain that he is knowingly, voluntarily, and intelligently waiving his Sixth Amendment right to counsel.  *See, e.g.*, *Faretta v. California*, 422 U.S. 806, 835 (1975); *see also* U.S. Const. amend. VI. ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.").  Because of the singular import of the right to counsel, we have instructed that "[c]ourts must indulge every reasonable presumption against a waiver of counsel."  *Buhl v. Cooksey*, 233 F.3d 783, 790 (3d Cir. 2000).  Accordingly, such a waiver "ought not [be] accept[ed] . . . absent a penetrating and comprehensive examination of all the circumstances."  *Stubbs*, 281 F.3d at 118 (internal quotation marks omitted).  It is clear that "the defendant [must] be informed of

5

all risks and consequences associated with his decision for self-representation." *United States v. Peppers*, 302 F.3d 120, 135 (3d Cir. 2002) (emphasis omitted).

Norwood argues that—while he knowingly, voluntarily, and intelligently waived his right to counsel after the District Court conducted a proper *Faretta* colloquy in 1997—Norwood revoked that waiver "when counsel was appointed for [Norwood's] re-sentencing on October 29, 1999, and revoked [it] again when counsel was appointed on April 5, 2013." (Appellant Br. 7-8.) According to Norwood, these revocations required the District Court to conduct a new *Faretta* colloquy before allowing Norwood to proceed pro se at the June 2013 Resentencing. (*Id.*) Having not conducted this colloquy, Norwood argues that his waiver of the right to counsel was not knowingly, voluntarily or intelligently made.

We disagree. Absent an express revocation of the criminal defendant's waiver or some other change in circumstances, a district court has no standing obligation to revisit the waiver question and conduct another *Faretta* colloquy at a later stage in criminal proceedings. *Cf. United States v. McBride*, 362 F.3d 360, 367 (6th Cir. 2004) (adopting rule established by "[o]ther circuits[, which] have held that a valid waiver remains in effect at subsequent proceedings in the absence of an explicit revocation by the defendant

or a change of circumstances that would suggest that the district court should make a renewed inquiry of the defendant").[1]

On the record before us, there is nothing to suggest that Norwood explicitly revoked his prior waiver of the right to counsel. There is also no evidence suggesting that his waiver was anything other than knowing, voluntary and intelligent. Norwood's motion to proceed pro se clearly established his desire to exercise his right to self-representation. Furthermore, having proceeded pro se for a number of years in this case, Norwood has demonstrated a keen understanding of the implications and ramifications of his decision to proceed pro se. (*See* Supp. App. 125 (stating that the "defendant has proceeded pro se throughout the course of this case, including trial, sentencing, two direct appeals, and several post-appeal applications" and "has a constitutional right to represent himself at sentencing").) The record does not reflect any change of heart on this issue. Moreover, Norwood sets forth no evidence reflecting a change in circumstances sufficient to have required a new inquiry into his decision to waive his right to counsel at the June 2013 Resentencing. Thus, the District Court did not err.

---

[1] *See also United States v. Modena*, 302 F.3d 626, 630-31 (6th Cir. 2002) (where criminal defendant "gave the district court no reason to suspect that he was uncertain about representing himself," no new *Faretta* colloquy was required and his waiver was knowing, intelligent and voluntary, even though "Modena had an interim change of heart regarding his decision to proceed pro se").

### B. *Motion to Disqualify Counsel*

"We review the district court's order in two stages." *United States v. Stewart*, 185 F.3d 112, 120 (3d Cir. 1999). "First, we exercise plenary review to determine whether the district court's disqualification [decision] was arbitrary—the product of a failure to balance proper considerations of judicial administration against the right to counsel." *Id.* (internal quotation marks omitted). "If we find that the district court's decision was not arbitrary, we then determine whether the court abused its discretion." *Id.*

Norwood argues that the District Court erred in failing to grant his motion to disqualify his court-appointed counsel, AFPD O'Malley, pursuant to Rule 1.10(a) of the New Jersey Rule of Professional Conduct ("RPC"). (Appellant Br. 8-9.) According to Norwood, the District Court erred because Norwood had an actual conflict with AFPD Koch, who had represented him previously in this case. (*Id.*) As such, Norwood argues that all attorneys in the Office of the Federal Public Defender should have been prohibited from representing him pursuant to Rule 1.10(a). (*Id.*)

The District Court did not err. RPC 1.10(a) states that "[w]hen lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by RPC 1.7 or RPC 1.9, *unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.*" RPC 1.10(a) (emphasis added). As the District Court

8

properly determined, even assuming that Norwood had an actual conflict of interest with AFPD Koch, that conflict did not prevent AFPD O'Malley from subsequently representing Norwood. The italicized language quoted above carves out an exception where there exists no significant risk of material limits on client representation. (Supp. App. 131-34.) Given Norwood's failure to identify any risk associated with AFPD O'Malley's representation, his argument fails. The District Court's decision was not arbitrary, and it did not abuse its discretion in denying Norwood's motion to disqualify AFPD O'Malley.

## C. *District Court's Sentencing Determinations*

We have plenary review of a district court's sentencing determination to the extent that it involves the application of legal principles. *See, e.g.*, *Gov't of the Virgin Islands v. Martinez*, 239 F.3d 293, 297 (3d Cir. 2001).

### 1. Application of the Guideline Manual In Effect on the Date of Sentencing

Norwood argues that the District Court should have used the Guidelines Manual in effect on the date of his resentencing, namely, the 2012 Sentencing Guidelines Manual. (Appellant Br. 9.) However, the language of 18 U.S.C. § 3742(g)(1) reflects that it was proper for the District Court to use the 1995 Guidelines Manual, which was the manual used at Norwood's original sentencing. 18 U.S.C. § 3742(g)(1) (providing that a "district court to which a case is remanded . . . shall apply the guidelines . . . that were in effect on the date of the previous sentencing of the defendant prior to the appeal"). We therefore

9

find that the District Court did not err in applying the 1995 Guidelines Manual when determining Norwood's sentence.

### 2. Violent Felony Convictions

The Armed Career Criminal Act ("ACCA") 18 U.S.C. § 924(e), provides that:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony . . . committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years . . . .

18 U.S.C. § 924(e)(1).

Norwood challenges the District Court's application of the ACCA, contending that his prior federal bank robbery conviction and his prior state conviction for attempted aggravated assault on a police officer were part of a single criminal episode and must be treated as one conviction. (Appellant Br. 10.)

This contention is in error. In *United States v. Schoolcraft*, 879 F.2d 64 (3d Cir. 1989) (per curiam), we adopted the "separate episodes" test for purposes of enhanced sentencing under the ACCA:

> The issue of enhanced sentencing under the ACCA has frequently arisen in cases where the defendant received multiple convictions in a single judicial proceeding. In each of these cases, courts have held that the individual convictions may be counted for purposes of sentencing enhancement so long as the criminal episodes underlying the convictions were distinct in time . . . In each case, the "separate episode test" was adopted. Recently, the Second Circuit stated that "it is fairly well-established in other circuits that § 924(e)(1)'s reference to 'convictions' pertains to single 'episodes' of felonious criminal activity that are distinct in time . . . ."

10

*Id.* at 73 (citing *United States v. Towne*, 870 F.2d 880, 889 (2d Cir. 1989). In *Schoolcraft*, we did not describe in detail the criteria that should be used to determine what constitutes a "separate" episode for purposes of the ACCA. However, several circuits have explained that even brief differences in time between crimes suffice to constitute separate episodes. For example, the Seventh Circuit stated that "it is necessary to look to the nature of the crimes, the identities of the victims, and the locations." *United States v. Cardenas*, 217 F.3d 491, 492 (7th Cir. 2000). Additionally, "we must ask whether the defendant had sufficient time to cease and desist or withdraw from the criminal activity." *Id.*

In the instant case, the separate episode test makes it clear that the bank robbery and attempted aggravated assault were two distinct crimes. The two crimes were committed in different states and against different victims. Norwood had opportunities to cease and desist from further criminal activity. Therefore, each crime must be seen as a separate and distinct criminal episode. The multiple crimes do not constitute a single criminal episode, as Norwood contends. Therefore, the District Court properly concluded that they constituted separate offenses for purposes of § 924(e).

Norwood also argues that the District Court "found facts that he had three prior convictions" for violent felonies that occurred on occasions different from one another and thereby violated his "Sixth Amendment jury-trial right." (Appellant Br. 11.) This argument is also without merit. As this Court stated in *United States v. Blair*, 734 F.3d

11

218, 227-28 (3d Cir. 2013), a District Court is permitted to take judicial notice of "details related to prior convictions" without fact-finding by a jury. The District Court's findings were therefore proper.

### 3. Restitution

Norwood argues that the District Court abused its discretion in failing to make specific factual findings regarding his ability to pay restitution. While it is true that this Court has held that such findings are required where there is a dispute over restitution, *see United States v. Pollak*, 844 F.2d 145, 155-56 (3d Cir. 1988), we explained in *United States v. Kendis*, 883 F.2d 209, 211 (3d Cir. 1989) that such specific findings relating to a defendant's ability to pay restitution are not required when there is no dispute regarding a defendant's ability to make restitution. Since there was no dispute about Norwood's ability to pay either prior to or at any of Norwood's sentencing hearings, the District Court did not abuse its discretion.

### 4. Consecutive Sentences

The District Court sentenced Norwood to a mandatory five-year consecutive sentence on Count Three (use of a firearm in relation to armed bank robbery) and a mandatory twenty-year consecutive sentence on Count Five (use of a firearm in relation to carjacking). (*See* Supp. App. 22.) In so doing, the District Court relied upon the text of the federal statute. *See* 18 U.S.C. § 924(c)(1) ("Whoever, during and in relation to any crime of violence . . . uses or carries a firearm, shall, in addition to the punishment

12

provided for such crime of violence . . . be sentenced to imprisonment for five years . . .
In the case of his second or subsequent conviction under this subsection, such person
shall be sentenced to imprisonment for twenty years . . . .").  It also relied upon
*Deal v. United States*, 508 U.S. 129 (1993), which held that an enhanced penalty can be
imposed even where the "second or subsequent conviction" results from the same multi-
count indictment as the first conviction—as was the case here—rather than from a
conviction occurring after the first conviction is final.  Norwood's argument, that
evolving standards of decency require that *Deal* be abrogated, is without merit.

## IV.    CONCLUSION

For the foregoing reasons, we will affirm the judgment of conviction.

13